**In re the HIGHWAY EQUIPMENT COMPANY, Highlift Equipment Co., U.S. Equipment Co., Debtors.**

**The HIGHWAY EQUIPMENT COMPANY, et al., Plaintiffs,**

**v.**

**ALEXANDER HOWDEN LIMITED, et al., Defendants.**

**Bankruptcy No. 1–85–01667.**
**Adv. No. 1–90–0037.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Oct. 30, 1990.

---

John B. Pinney, Charles G. Heyd, Cincinnati, Ohio, for plaintiff.

Joseph A. Brunetto, Columbus, Ohio, for defendants.

John J. Finnigan, Jr., Cincinnati, Ohio, for co-defendants.

Thomas Noland, Dayton, Ohio, Liquidating Trustee/co-plaintiff.

Charles Caldwell, Cincinnati, Ohio, Asst. U.S. Trustee.

## DECISION ON MOTION TO DISMISS

BURTON PERLMAN, Chief Judge.

Plaintiff, The Highway Equipment Company, filed a Chapter 11 bankruptcy case in this court in 1985, and on April 1, 1988, we confirmed a Chapter 11 plan in the case. The plan contemplates that litigation on behalf of the debtor will be carried on after confirmation. A Liquidating Trust Agreement was approved by this court as part of the Chapter 11 plan. All property and claims of Highway Equipment Company, including those asserted in this adversary proceeding, were assigned to the liquidating trust. The liquidating trustee named in the Agreement is Thomas R. Noland, who is a co-plaintiff in this proceeding.

There is considerable background to the present proceeding, including other law suits. In 1981, Highway Equipment was contemplating a sale of heavy earth-moving equipment valued at about $6 million to an entity identified as Knox Equipment Leasing/1981, Ltd. ("Knox"). This proceeding has to do with alleged actions by the defendants in regard to the obtaining of financial guarantee insurance in connection with the proposed transaction. The sale to Knox by Highway Equipment took place (giving rise to another lawsuit against different defendants which has been tried in the U.S. District Court). Beacon Insurance Company ("Beacon"), an insurance agent not a party to this suit (but a defendant in a second lawsuit brought by Highway Equipment) issued an insurance policy which undertook to insure Highway Equipment against losses incurred as a result of defaults in the payment of amounts owed to Highway Equipment by Knox. The complaint in this proceeding alleges various bases for liability on the part of the several defendants who are said to have an involvement in the provision of the financial guarantee insurance policy.

The complaint identifies the defendants herein as follows:

1. Alexander Howden Limited is the successor in interest to the business of Alexander Howden Insurance Brokers, Ltd. ("AHIB"). Howden Limited is an English corporation and has its principal place of business in London, England.

2. Alexander Howden Group Ltd. ("Howden Group") is an English corporation having its principal place of business in London, England. Howden Group is a holding company for Howden Limited. Howden Group at times relevant to the

present claims operated as a "Lloyd's Broker" under the name of AHIB.

3. Alexander and Alexander Services, Inc. ("A & A Services") is a Maryland corporation having its principal place of business in New York, New York. Both Howden Limited and Howden Group are wholly-owned indirect subsidiaries of A & A Services, Inc.

4. Alexander and Alexander, Inc. is a unit of A & A Services operating in Ohio. It is a Maryland corporation having its principal place of business in New York, New York. It is an indirect wholly-owned subsidiary of A & A Services.

5. Colin G. Bird ("Bird") is a resident and citizen of England. At all relevant times he was the managing director of AHIB's North American division in charge of the United States insurance business at AHIB. He traveled frequently to the United States in connection with his position.

6. Loveless Insurance–Florida, Inc. ("Loveless") was a Florida corporation having its principal place of business in Tampa, Florida. It was a wholly-owned direct subsidiary of Crump, E & S of Atlanta, Inc., but filed articles of dissolution with the written consent of its sole shareholder, Crump, E & S.

7. Crump, E & S of Atlanta, Inc. is a Georgia corporation having its principal place of business in Atlanta, Georgia. At the times relevant to this proceeding, Crump operated under the name of Loveless and Company, Inc., and was its parent.

In the present proceeding, defendant Loveless Insurance–Florida, Inc. and Crump, E & S of Atlanta, Inc., jointly filed an answer to the complaint. The answer contains a cross-claim by these defendants against the remaining defendants in the case. The other defendants, Howden Limited, Howden Group, A & A Services, Inc., A & A, Inc., and Bird have not filed an answer in the case, but instead have jointly filed a motion to dismiss pursuant to Bankruptcy Rule 7012, and it is this motion which is now before us for decision.

The motion asserts as issues (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction over these defendants, including sufficiency of service of process; (3) failure to state a claim with regard to certain of the defendants; and (4) statute of limitations. Movants have requested oral argument. We find that the issues presented by the parties are well-defined in their memoranda and oral argument would not be useful in this instance. We deny the request for oral argument.

This court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1334(b) and the General Order of Reference entered in this District. The present motion is a core proceeding arising under 28 U.S.C. Section 157(b)(2)(A) and (O).

We turn to the several grounds of the motion and deal with them hereafter seriatim.

1. Subject Matter Jurisdiction.

The jurisdiction of this court, derivative of that of the district court, is stated in 28 U.S.C. Section 1334. The scope of jurisdiction is there stated to be "original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11." Movants assert that the present proceeding does not arise under Title 11, does not arise in a case under Title 11, and is not related to a case under Title 11. Plaintiffs contest movants' motion on this score with the assertion that this proceeding is related to a case under Title 11.

Movants' argument is based upon the fact that there is a confirmed Plan in the case, and hence, they say, no estate exists to be administered, the implication being that a bankruptcy estate is a necessary precondition for jurisdiction. Confirmation, say movants, fixes the rights of all parties and terminates the court's administration of the estate. Moreover, they say that the Plan created a liquidating trust according to the terms of which the beneficiaries of liquidation of the assets of debtors were a principal of Highway Equipment, his counsel, and "certain post-confirmation creditors of the Debtor." Thus, say movants, this action has no effect upon debtor's rights. Plaintiffs respond by

pointing to the reservation of jurisdiction in the confirmed Plan. Movants then contend that while it may be appropriate to retain jurisdiction in the bankruptcy court after confirmation, such reservation of jurisdiction is improper if it is beyond what is necessary to effectuate the Plan.

The confirmed Plan forthrightly says that it is a liquidating Plan. It provides the following class of creditors: Class A—Priority Claim; Class B—Priority Tax Claim; Class C—Administrative Convenience Claim; Class D—Nonpriority Unsecured Allowed Claims; Class E—Equity Security Interests; and Class F—Subordinated Claims. Class D is the general class for unsecured creditors. The Plan provides for payments to tax authorities under Class B in accordance with the provisions of the Bankruptcy Code, and for payment of creditors in Classes A and C prior to payment to creditors in Class D. The proceeds of liquidation will be distributed to Class D claimants pro rata, and no classes subordinate to Class D shall be paid until Class D claimants are paid in full.

Attached to the Plan is a Liquidating Trust Agreement and Article V(2) of the Plan makes that Agreement a material part of the Plan. The Liquidating Trust Agreement places upon the liquidating trustee appointed thereunder the obligation to see to the liquidation of all of the Trust Property and to the distribution of the net proceeds of liquidation in accordance with the Plan. The Trust Property includes certain listed lawsuits, but is not limited to the specific suits listed. In its amended disclosure statement may be found a succinct description by debtors of the assets to be liquidated in performance of the Plan.

Such assets make reference to two groups of litigation, those characterized as claims now existing or hereafter arising out of Beacon Suits, and claims now existing or hereafter arising out of the Cat Suit, the terms "Beacon Suits" and "Cat Suit" being those employed in the Liquidating Trust Agreement. The instant adversary proceeding falls within the category of Beacon Suits as is made clear from the definition of debtor's assets appearing at

Section 1.6(d) of the Liquidating Trust Agreement. Finally, we must note that the confirmed plan contains a retention of jurisdiction at Article IX which provides, inter alia, the power "to recover any preference, transfers, assets or damages to which Debtors may be entitled under applicable provisions of the Bankruptcy Code or other Federal, State, or Local law."

In *In re Salem Mortgage Company*, 783 F.2d 626 (6th Cir.1986), the court said at p. 634:

> Courts have developed different tests in determining whether subject matter jurisdiction exists in a proceeding claimed to be "related to" a particular bankruptcy case. Some courts would find jurisdiction "only where the action clearly involved property of the estate ... or where a determination of the controversy is required for the proper administration or reorganization of the estate...." *In re General Oil Distributors, Inc.*, 21 B.R. 888, 892 n. 13. (Bankr.E.D.N.Y.1982) (citations omitted). Another test finds jurisdiction "whenever 'the outcome of the proceeding could conceivably have *any effect upon the estate* being administered in bankruptcy.'" Id. (citing *Mazur v. U.S. Air Duct Corp.*, 8 B.R. 848, 851 (Bankr.N.D.N.Y.1981) (emphasis in original)). Although situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement, we believe that a broader interpretation of the statute more closely reflects the congressional intent in adopting the new bankruptcy laws.

Whichever of the tests mentioned in the *Salem* quote above is applied, what is before us is a "related proceeding" within our subject matter jurisdiction. The plan of debtors contemplates the present litigation, and the proper administration and reorganization of the case requires the adjudication of this controversy. Certainly the outcome of the litigation will have a direct effect upon the case, for upon it turns any distribution to creditors. This proceeding is clearly within the definition of "related proceedings" to be found at 1 Collier on Bank-

ruptcy (15th Ed.) Sec. 3.01 at p. 3–26, those which "involve causes of action owned by the debtor that became property of the estate under section 541."

In *In re Showcase Natural Casing Co., Inc.*, 54 B.R. 138 (Bankr.S.D.Ohio 1984), a Chapter 7 case, we found related proceeding subject matter jurisdiction in an adversary proceeding in which neither party was a bankruptcy debtor. We found that the requisite relationship existed because the bankruptcy case could not be closed until the proceeding was resolved. That reasoning is directly applicable here, and the outcome is re-enforced by the fact that in the present proceeding a bankruptcy debtor is the plaintiff. None of the cases cited by movants, *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984); *In re Wood*, 825 F.2d 90 (5th Cir.1987); *In re Dogpatch, U.S.A., Inc.*, 810 F.2d 782 (8th Cir.1987); *In re A.H. Robins Co., Inc.*, 788 F.2d 994 (4th Cir.1986), is inconsistent with the conclusion which we have reached.

■ The argument by movants that this court cannot have jurisdiction because this is a Chapter 11 case in which there is a confirmed plan, cannot alter the outcome we have indicated. That jurisdiction may be retained by means of a reservation of jurisdiction in a Chapter 11 plan is so well established that it scarcely requires support by way of authority. See 5 Collier on Bankruptcy (15th ed.) Sec. 1142.01[1]. The final point of movants, that the reservation of jurisdiction is too broad, is likewise without merit. In the language of a case cited by movants, *In re J.T. Gerken Trucking, Inc.*, 10 B.R. 203 (Bankr.N.D.Ohio 1981), jurisdiction may be extend to matters concerning the operation of the Plan, and that is certainly the case here. Defendants' motion to dismiss on the ground of lack of subject matter jurisdiction will be denied.

## 2. Personal Jurisdiction.

The motion so far as it contests personal jurisdiction does so, first, by asserting that personal jurisdiction in the bankruptcy court is not more extensive than is personal jurisdiction in a state court. In their motion, movants contend that because a state court dismissed a similar state court action against them for lack of personal jurisdiction, this court should do likewise. That dismissal, movants say, was on the basis that there were not sufficient contacts with the State of Ohio by the defendants so that an Ohio state court had personal jurisdiction of the defendants. The motion in this court also asserts that the moving defendants are not subject to service in the United States because they are not U.S. citizens.

### A. *Extent of Personal Jurisdiction in the Bankruptcy Court.*

■ In an unreported decision, *In re Pedco, Inc.*, Adversary No. 1–85–0346, S.D. Ohio, Western Division, entered May 28, 1986, we said:

A provision for nationwide service of process in an action arising under the Securities Exchange Act has been held constitutional. In *Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir.1979), the issue before the court was whether the Due Process Clause imposes any restraints upon nationwide service of process. The court said at page 332:

The most extensive recent discussion of the restraints which Due Process imposes on jurisdictional power is *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). That decision rejected the notion that Due Process limitations on jurisdiction arose from considerations of territorial sovereignty and held instead that Due Process limitations reflected "traditional notions of fair play and substantial justice."

\*   \*   \*   \*   \*   \*

It is clear, therefore, that the "fairness" standard imposed by *Shaffer* relates to the fairness of the exercise of power by a particular sovereign, not the fairness of imposing the burdens of litigating in a distant forum. Applying this standard of fairness, it is clear that this instance of personal service satisfies Due Process. Here, the sovereign is the United States, and there can be no question but that the

defendant, a resident citizen of the United States, has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court.

The *Fitzsimmons* court also quoted the case of *United States v. Union Pacific Railroad,* 98 U.S. 569, 25 L.Ed. 143 (1878), in which the court stated:

> There is, therefore, nothing in the Constitution which forbids Congress to enact that, as to a class of cases or a case of special character, a circuit court—any circuit court—in which suit may be brought, shall, by process served any where in the United States, have the power to bring before it all the parties necessary to its decision.

The *Fitzsimmons* court points out that this conclusion has often been used to uphold the validity of nationwide service of process under Section 27 of the 1934 Securities Exchange Act.

The same reasoning is equally valid with respect to bankruptcy cases. Indeed, the notion that nationwide service of process in bankruptcy cases is invalid was rejected by the court in *Foreman Industries, Inc. v. General Motors Corp.,* 34 B.R. 712 (D.C.S.D.Ohio 1983).

Furthermore, the contention of defendant that defendant must have minimum contacts with the bankruptcy forum state before effective personal jurisdiction arises must be rejected. Minimum contacts are not necessary for personal jurisdiction in a bankruptcy context. *In re G. Weeks Securities, Inc.,* 3 B.R. 215 (Bankr.W.D.Tenn.1980); *In re McRae Fire Protection, Inc.* [49 B.R. 773] 13 BCD 57 (Bankr.E.D.Mich.1985).

Subsequent decisions re-enforce our reasoning and conclusion in *Pedco. Diamond Mortgage Corporation of Illinois v. Sugar,* 913 F.2d 1233, 20 BCD 1669, 1674–1675 (7th Cir.1990); *In re Sonnyco Coal, Inc.,* 89 B.R. 658 (Bankr.S.D.Ohio 1988); *Matter of Van Huffel Tube Corp.,* 71 B.R. 145 (Bankr.N.D.Ohio 1987); *In re Prospect Hill Resources, Inc.,* 69 B.R. 79 (Bankr.N.D.Ga.1986).

For the foregoing reasons, we reject the contention of movants that jurisdiction over the person in bankruptcy courts is not more extensive than in a state court for the same jurisdiction. The foregoing discussion disposes of the contention of defendants that absence of personal jurisdiction is established because prior state court proceedings are entitled to collateral estoppel effect. Defendants' motion to dismiss on grounds that personal jurisdiction in the bankruptcy court is not more extensive than is personal jurisdiction in a state court will be denied.

### B. *Alien Jurisdiction.*

Movants next contend that the complaint should be dismissed for lack of personal jurisdiction as to them because they are not citizens of the United States and are not amenable to process in the United States.

In responding to the motion in this respect, plaintiffs make the following assertions of fact:

1. Each moving defendant does extensive business in the United States, either directly or through subsidiaries, officers, agents and employees, and they each derive substantial income from their respective business dealings in this country.

2. All of the moving defendants have been effectively served within the United States. A & A Services and defendant Alexander and Alexander, Inc. are both domestic United States entities and were served by first class mail. Howden Limited has been served within the United States by mailing process to an individual and two corporations said to be agents for Howden Limited. Howden Group was served in the same manner.

3. Defendant Bird was personally served on May 3, 1990 in Boston, Massachusetts, while he was in this country attending an insurance conference.

4. Howden Limited and Howden Group were both served by international registered mail in London on March 6, 1990 and also under the Hague Service Convention on April 24, 1990. Bird was served by registered mail on March 9, 1990. There was a completion of service on Howden

**916**

Limited and Howden Group by the designated English Central Authority under the Convention on April 24, 1990.

None of the foregoing facts are disputed by the moving defendants. Instead, it is the position of the moving defendants that personal jurisdiction over them has not been obtained for the reason that there has not been shown a compliance with Ohio's long-arm statute. Indeed, they say, Ohio courts have already determined that there has not been compliance with that statute and that determination precludes relitigation of the issues here under principles of collateral estoppel.

■ The position of moving defendants in this respect is not well taken. See excellent discussion in *In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1344–1345 (11th Cir. 1988), reversed on other grounds sub. nom. *Granfinanciera, S.A. v. Nordberg,* —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). It is not necessary in order for there to be personal jurisdiction in the bankruptcy court, that there be compliance with the minimum contacts test prevailing in the state court where the bankruptcy court sits. The facts show that there has been personal service upon the moving defendants within the United States, as well as in accordance with the requirements of the Hague convention, and this is sufficient to give this court personal jurisdiction over the domestic moving defendants. It is not necessary for us to address the proper application of B.R. 7004(d) and (e), though the parties have discussed this at some length.

It is true that in the case of a foreign national, service alone is insufficient to make out personal jurisdiction in this court. See *In re Chase & Sanborn, supra.* That serves merely a notice function dictated by due process considerations. There is in addition a fairness consideration requiring that the question be answered: Ought this foreign national be obliged to participate in litigation in the United States. It is that to which the minimum contacts test is directed. Minimal contacts in Ohio, however, need not be shown. It is a national federal law, the bankruptcy law of the United States, which is here involved and consequently minimum contacts with the United States is all that must be shown. *In re Sonnyco Coal, Inc., supra.*

The complaint does not contain sufficient allegations to which we may refer on this motion to dismiss as providing a prima facie showing of sufficient minimum contact with the United States in order to support personal jurisdiction. We therefore defer ruling at this time on the motion to dismiss for lack of personal jurisdiction as to the alien moving defendants.

3. Failure to State a Claim.

In this branch of its motion, moving defendants assert that the complaint contains insufficient allegations to make out a claim against defendants Alexander and Alexander Services, Inc., and Alexander and Alexander, Inc.

■ In examining a complaint for present purposes, it is fundamental that the well-pleaded allegations of a complaint must be accepted as true. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515–16, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972).

Plaintiffs, in response to the motion in this regard, point to allegations in the complaint that A & A Services and A & A essentially function, along with Howden Limited and Howden Group, as a single economic entity. In addition, the complaint contains allegations of a conspiracy participated in by the mentioned defendants, and that such conspiracy was in progress in the relevant time period.

We find that the assertion of the moving defendants that a direct involvement in the issuance of the subject insurance policies must be shown in order to find liability, is not well taken. The motion to dismiss on this ground will be denied.

4. Statute of Limitations.

■ Finally, defendants argue that plaintiffs' claims are time barred. In advancing this argument, defendants start from the proposition that "it is undisputed that all of Howden's services in connection with the

claims asserted in the Complaint were performed in London. Further, all of the wrongful conduct alleged in the Complaint, took place, if at all, in London." Defendants then reason from this premise that the appropriate statute of limitations is to be derived from the laws of England, and under English law the time limit to bring tort actions is six years. Since the events in the Complaint occurred no later than 1982, say defendants, plaintiffs' claims are barred by the appropriate statute of limitations.

Plaintiffs respond to this position of defendants by making reference to 11 U.S.C. Section 108(a). The Bankruptcy Code there provides:

**Sec. 108. Extension of time.**

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

Plaintiffs suggest that as of the date of the filing of the bankruptcy, July 2, 1985, clearly there was no time bar against the claims now being asserted in the present Complaint.

Pursuant to Section 108(a), plaintiffs were free of any time bar for two years, that is, until July 2, 1987. On that date, they say, they filed their suit in the Hamilton County Common Pleas Court. That suit was dismissed voluntarily February 23, 1990. The Complaint now before us was filed on the same date, February 23, 1990. The law of Ohio, ORC Section 2305.19, allows a new action to be filed after a voluntary dismissal within a year from the date of the dismissal. Since they complied with this statute, plaintiffs say that they are free of any time bar. That is, plaintiffs say that the bankruptcy law by its terms extends the relevant statute of limitations if necessary so that their Common Pleas case was timely filed. Then, when their state law action was dismissed, by the applicable state statute, the same claim could be filed here free of any time bar.

We deny defendants' motion to dismiss the complaint on grounds that it was barred by a statute of limitations, for the reason that the objection assumes a state of facts which have not been established and which must be true if the basic contention of the objectors is to be given validity, that English law should be applied here. While, in its memorandum in chief, movants assert flatly that all relevant conduct occurred in England, and therefore English law should apply, in their reply memorandum they retreat from this position and argue that, per *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), this court should make a judgment that the most significant contacts occurred in England and therefore English law should apply. Obviously the argument assumes evidence not before us, and defendants' objection on this score is at best premature. This ground for the motion to dismiss will be denied.

\* \* \*

At this point we have disposed of all the grounds of the motion to dismiss, except the ground of lack of personal jurisdiction of citizens of England. The course which will now be followed is impliedly suggested by plaintiffs in their Motion to Compel Discovery and the responsive memorandum filed by defendants. The parties will present such evidence as is appropriate and relevant on the issue of minimal contacts. While we have in this Decision reached a conclusion as to all the other grounds presented in the motion to dismiss pled by defendants, we will not enter an order hereon until the parties have had an opportunity to present such evidence.