**In re TGX CORPORATION, Debtor.**

**TGX CORPORATION**

v.

**J.C. TEMPLETON, et al.**

**No. 5:92cv486.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

May 3, 1994.

Michael Ray Mangham, Louis R. Davis, Herman E. Garner, Jr., George W. Hardy, III, Mangham Hardy & Rolfs, Lafayette, LA, Thomas C. Jones, Calhoun, Gump, Spillman & Stacy, P.C., Dallas, TX, for TGX Corp.

Richard J. Reynolds, John L. Schober, Jr., Schober & Reynolds, Houston, TX, for Paragon Resources Inc., Paragon Private Drilling Program 1982, Paragon Private Drilling Program 1982–2, Majestic Energy Corp., Majestic Farms Inc., W.M. Templeton.

James W. Davis, Comegys, Lawrence, Jones, Odom & Spruiell, Shreveport, LA, for Kilmont Energy, Inc.

John R. Martzell, Martzell & Bickford, New Orleans, LA, Richard J. Reynolds, John L. Schober, Jr., Schober & Reynolds, Houston, TX, for J.C. Templeton, C.E.I. Production Co., Charter Bay Energy Inc., 1987 Humphrey Trust, Templeton Children Trust No. 1, Templeton Children Trust No. 2, Templeton Children Trust No. 3, Templeton Children Trust No. 4, Ben A. Templeton, Susan Templeton O'Brien, Sarah Templeton Willett.

Arthur R. Carmody, Jr., Wilkinson Carmody & Gilliam, Shreveport, LA, Richard J. Reynolds, John L. Schober, Jr., Schober & Reynolds, John H. Buck, Buck Rouner & Keenan, Houston, TX, for Robert Ted Enloe, III, Joe H. Foy.

W. Mark Cotham, Morris & Campbell, Houston, TX, for Leonard Leon, Edward T. Cotham, Sr.

Arthur R. Carmody, Jr., Wilkinson Carmody & Gilliam, Shreveport, LA, John H. Buck, Buck Rouner & Keenan, Houston TX, for Thomas L. Kister, Harry V. Carlson, W.A. Griffin.

*RULING*

LITTLE, District Judge.

This consolidated action tests the limits of a federal court's jurisdiction over bankruptcy adversary proceedings once a plan of reorganization has been confirmed in the underlying bankruptcy case. The reorganized successor-in-interest to the debtor brought these proceedings against certain of the debtor's former directors, officers, and related entities. The defendants moved to dismiss, arguing that this court does not have jurisdiction over the subject matter in dispute and, alternatively, that the plaintiff is estopped from prosecuting this action for failure to indicate its intentions in the disclosure statement accompanying the confirmed plan. For the reasons that follow, the court denies the defendants' motions.

I.

The debtor filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code on 22 February 1990. Thereafter, the debtor operated its business as a debtor-in-possession, and its pre-petition management continued to direct its affairs

pursuant to 11 U.S.C. §§ 1107, 1108. On 26 March 1990, the debtor's management filed required schedules of the debtor's "property"[1] and liabilities.[2] The debtor's management proposed plans of reorganization on 24 September 1990, 1 November 1990, and 14 January 1991, but was unable to confirm these plans due to opposition by the committee of the debtor's unsecured creditors ("the unsecured creditors' committee" or "the committee").

The committee argued that the proposed plans constituted attempts by the debtor's management to advance their individual interests at the expense of the creditors of the debtor's estate. The committee alleged that certain members of management had engaged in improper self-dealing prior to the filing of the bankruptcy petition and sought to perpetuate their misdeeds through the mechanism of plan proposal. The committee requested that the bankruptcy court appoint an examiner to investigate the debtor's affairs and to initiate any adversary proceedings necessary to recover property of the debtor's estate.[3]

On 15 April 1991, the bankruptcy court granted the committee's request. The court appointed an examiner, *inter alia*, to prepare a statement of "fact[s] ascertained pertaining

to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or [pertaining] to a cause of action available to the [debtor's] estate." *See In re TGX*, No. 90BK–10499 (Bankr.W.D.La. 6 May 1991) (ordering the examiner to conduct investigations pursuant to 11 U.S.C. § 1106(a)(3)–(4)); 11 U.S.C. § 1106(a)(3)–(4).

On 26 August 1991, the examiner issued an initial report corroborating the committee's concerns. The examiner's report described a significant, past-due receivable from Paragon Resources, Inc. ("Paragon"), an entity controlled by director and consultant to the debtor W.M. Templeton, son of director and chief executive officer J.C. Templeton. The origin of this receivable was two-fold: (i) the debtor's pre-petition provision of general and administrative services to Paragon and (ii) the debtor's pre-petition partnership with Paragon in the Bass Island Oil and Gas Drilling Program in Chatauqua County, New York ("Bass Island Drilling Program"). According to the examiner's report, the debtor charged no interest on this receivable, which then amounted to nearly $2 million. The examiner recommended further inquiry into this[4] and other pre-petition, insider transactions.[5]

---

1. The commencement of a bankruptcy case creates an estate, comprised of, *inter alia*, the following property, "wherever located and by whomever held": "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a).

2. Under the heading "contingent and unliquidated claims of every nature, including counterclaims," the schedule of property listed litigation to which the debtor was a party on 22 February 1990; it did not list potential claims that the debtor might thereafter assert.

3. The committee alleged that the following engaged in improper self-dealing, received an improper benefit, and/or breached their fiduciary duties to the debtor: directors J.C. Templeton, W.M. Templeton, Joe H. Foy, Robert Ted Enloe III, W.A. Griffin, Thomas L. Kister, and Leonard Leon and affiliated entities Paragon Resources, Inc., Majestic Energy Corp., and the 1987 Humphrey Trust.
   The allegedly improper self-dealing concerned (i) the debtor's purchase of an interest in the United Building Company from WMT 1981 Real

Estate Venture Partners ("WMT"), a partnership managed by W.M. Templeton and whose participants included W.M. Templeton's father (and the debtor's chief executive officer) J.C. Templeton, and W.M. Templeton's siblings Ben A. Templeton, Ora M. Templeton, Susan M. Templeton, and Sarah Templeton Willett; and (ii) the debtor's transactions with Paragon Resources, Inc., a corporation controlled by W.M. Templeton and owned by Majestic Energy Corp. (which was, in turn, owned by the 1987 Humphrey Trust, "a trust established for, among others, the grandchildren of J.C. Templeton and the children of [W.]M. Templeton").

4. The bankruptcy court subsequently ordered the debtor to place in an escrow account all funds collected on behalf of Paragon in the Bass Island Drilling Program.

5. The examiner also described a potential claim against J.C. Templeton for expense reimbursements that had been improperly documented. Based upon the examiner's report, the bankruptcy court ordered the debtor not to pay any more expense reimbursements without proper documentation.

The debtor, the unsecured creditors' committee, and the equity security holders' committee ("plan proponents") then jointly proposed a plan of reorganization ("the proposed plan" or "the plan"). *See Plan of Reorganization for TGX Corp. Jointly Proposed by TGX Corp., the Official Unsecured Creditors' Committee and the Official Equity Security Holders' Committee* (Docket # 1699). The proposed plan provided for the installation of a new board of directors and termination of W.M. Templeton's and J.C. Templeton's active service with the debtor—the latter being retained as a consultant to the reorganized successor-in-interest to the debtor. *Id.* § 6.03.

The plan directed the debtor's application of the estate's disposable property in partial satisfaction of the claims of the debtor's prepetition creditors. *See id.* §§ 3.01–.15. It vested the bulk of the remainder of the estate's property in a new entity ("the reorganized debtor"), subject to the rights and liabilities outlined in the plan, but "free and clear" of the claims and interests of the debtor's pre-petition creditors and equity security holders. *Id.* § 6.01. The plan "preserved and retained" in the estate, for enforcement post-confirmation by the reorganized debtor:

6. Section 1.14 of the proposal defined "Claim" to mean

(i) a right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

7. Section 1.43 of the proposal defined the "NFG Litigation" to mean

any and all cases, actions, adversary proceedings or other proceedings before any court, agency or other tribunal in which National Fuel Gas Distribution Corporation (or any of its affiliates) and TGX (or any of its affiliates) are parties thereto and which were either (i) pending as of the Petition Date or (ii) commenced subsequent to the Petition Date, including, without limitation, the following actions: (a) Civil Action No. CIV–84–1372E

All Claims [6] recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of any indebtedness, and all other claims owed to or in favor of [the debtor's estate], to the extent not specifically compromised and released pursuant to [the proposed plan] ... including, without limitation, any and all claims of [the debtor's estate] in the NFG Litigation.[7]

*Id.* § 9.01.[8] The bankruptcy court scheduled a hearing on the proposed plan for 3 January 1992.

The plan proponents filed a proposed disclosure statement to explain the plan's provisions to those entitled to vote at confirmation—the relevant holders of claims against and interests in the debtor's estate. *See Disclosure Statement for Plan of Reorganization for TGX Corp. Jointly Proposed by TGX Corp., the Official Unsecured Creditors' Committee, and the Official Equity Security Holders' Committee* (Docket # 1698) (*"Disclosure Statement"*). The disclosure statement made reference to the examiner's initial report but did not discuss the examiner's findings in detail. *Id.* at 106–07 ("Reference is made to certain reports of the Examiner, filed in the record of the Chapter 11 proceeding, covering certain areas assigned to the Examiner for investigation.").[9]

pending in the United States District Court for the Western District of New York, (b) Adversary Proceedings Nos. 90AP–1025, 90AP–1027, 90AP–1028, and 91AP–1007 pending in the Bankruptcy Court or the United States District Court for the Western District of Louisiana, and (c) the breach of contract action commenced by TGX in the New York Supreme Court, Chautauqua County, New York.

8. The proposed plan also provided that the bankruptcy court would retain jurisdiction over

all questions and disputes regarding title to the assets of the [debtor's estate], and ... all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the Confirmation Date, between [the debtor] and any other party, including, but not limited to, any right of [the debtor] to recover assets pursuant to the provisions of the Bankruptcy Code.

*Id.* § 10.01.

9. The debtor's SEC Form 10–K for the year ending 31 December 1990 was attached to the disclosure statement as an exhibit. On page 78,

A schedule of the debtor's property was attached as an exhibit to the proposed disclosure statement. *Disclosure Statement* exh. D. This schedule was identical to the one filed by the debtor's management on 26 March 1990, except that it contained a current valuation for the property set forth in the earlier schedule. Under the heading "contingent and unliquidated claims of every nature, including counterclaims," the latter schedule listed litigation to which the debtor was a party on 22 February 1990 but omitted mention of the potential claims set forth in the examiner's report.[10]

Then, on 13 September 1991, W.M. Templeton resigned as consultant to the debtor and J.C. Templeton resigned as the debtor's chief executive officer; they remained members of the debtor's board of directors, however.[11] Thereafter, the plan proponents filed an amended disclosure statement. *See Disclosure Statement for Plan of Reorganization for TGX Corp. Jointly Proposed by TGX Corp., the Official Unsecured Creditors' Committee, and the Official Equity Security Holders' Committee* (Docket # 1907) (*"Amended Disclosure Statement"*). This statement discussed the examiner's initial findings in greater, but not exhaustive, detail. With regard to the Paragon receivable, the statement announced "The Examiner [ ] recommended that a thorough legal analysis and accounting audit be undertaken with respect to monies owed the Debtor by Paragon Resources." *See id.* at 120, 131. The schedule of assets attached to the statement was unchanged from the one attached to the earlier disclosure statement.[12]

On 16 December 1991, the examiner issued a supplemental report describing in detail the debtor's potential claims against current and former insiders and affiliated entities.[13] *Third Interim Report By Examiner: Paragon Receivable and Related Transactions; Recommendation to Initiate Legal Proceedings and Recommendation for Further Inquiry* (Docket # 2147) (*"Third Interim Report By Examiner"*). As described, these claims arose from: the debtor's provision of general and administrative services to Paragon, the debtor's provision of salt water disposal services to Paragon and insiders or affiliates of the debtor, the debtor's partnership with Paragon in the Bass Island Drilling Program, the debtor's partnership with Paragon in the Paragon/Templeton 81–A and 81–B registered limited partnerships ("the Paragon/Templeton partnerships"), the debtor's acquisition of an interest in the United Building Company from certain of its insiders or affiliates, and the acquisition by insiders or affiliates of the debtor of interests in a limited partnership managed by the debtor ("the Amarex limited partnership").

On 23 December 1991, the bankruptcy court held a hearing on the examiner's report. At this hearing, the examiner categorized the aforementioned potential claims as either (i) "ordinary course of business" collection claims that could be pursued by the debtor without further assistance from the examiner, or (ii) "extraordinary," insider self-dealing claims that should only be pursued by the examiner or some other entity unrelated to the debtor's pre-petition management. In response, the bankruptcy court noted the imminency of confirmation hearings on the proposed plan and expressed its unwillingness to postpone confirmation in or-

---

this document announced that, as of 31 December 1990, Paragon owed the debtor a noninterest bearing total of $1,961,000, "all of which was classified as noncurrent."

10. Another part of the disclosure statement described the transaction by which the debtor acquired an interest in the United Building Company but did not recognize the potential for a claim against the former holders of this interest. *Disclosure Statement* at 216.

11. J.C. Templeton, W.M. Templeton, and Joe H. Foy constituted the executive committee of the debtor's board of directors.

12. The list of "contingent and unliquidated claims of every nature, including counterclaims" was not updated to include suits that had been instituted between the filing of the proposed and amended disclosure statements. *See, e.g., TGX Corp. v. Exxon Co. (In re TGX Corp.),* Adversary Proceeding No. 91–1291 (Bankr.W.D.La. filed 25 September 1991).

13. Among the potential defendants named in the examiner's report were: J.C. Templeton, W.M. Templeton, Paragon Resources, Inc., Paragon Private Drilling Program 1982, Paragon Private Drilling Program 1982–2, CEI Production Company, and Charter Bay.

der to permit the debtor to pursue claims that may, in the end, cost more to litigate than they could generate by way of recovery.

The bankruptcy court concluded that a wiser course to follow would be to confirm a plan that retained these causes of action on behalf of the debtor's estate, for enforcement post-confirmation by the reorganized debtor.[14] In this manner, the reorganized debtor—a business entity with a vested stake in the recovery[15]—could evaluate the feasibility of bringing these claims without interference from the debtor's pre-petition management. The examiner and counsel for the unsecured creditors' committee concurred in the bankruptcy court's conclusion. Counsel for Paragon was also present at this hearing.[16]

The debtor, the unsecured creditors' committee, and the equity security holders' committee then proposed an amended plan of reorganization. *See Amended Plan of Reorganization for TGX Corp. Jointly Proposed by TGX Corp., the Official Unsecured Creditors' Committee and the Official Equity Security Holders' Committee* (Docket # 2255) (*"Amended Reorganization Plan"*). As in the earlier plan, the amended plan provided for the termination of the debtor's active

**14.** This manner of proceeding was initially recommended by the examiner at the 26 August 1991 hearing on his initial report.

**15.** Recovery in excess of the amount of prepetition claims against and interests in the debtor's estate would vest in the reorganized debtor as the debtor's successor-in-interest.

**16.** Paragon's counsel at this hearing currently represents defendants Paragon, J.C. Templeton, W.M. Templeton, the Paragon 1982 partnerships, Majestic, Majestic Farms Inc., CEI Production Co., Kilmont Energy, Inc., the 1987 Humphrey Trust, B.A. Templeton, S.T. Willett, S.T. O'Brien, and the Templeton Children Trusts ## 1–4.

**17.** Article 8 of the amended plan provided for the possibility of recovery of preferences and/or fraudulent conveyances from creditors of the debtor's estate:

> Any creditor determined to have received a preference or fraudulent conveyance pursuant to Sections 547 or 548 of the Bankruptcy Code or any other applicable law shall be required to remit to [the debtor] an amount equal to the difference between (i) the determined amount of the preference or fraudulent conveyance and (ii) the cash amount the creditor would

employment of W.M. and J.C. Templeton; the amended plan, however, no longer provided for the retention of J.C. Templeton as a consultant to the reorganized debtor. *Id.* § 6.03. As in the earlier plan, the amended plan vested the bulk of the property of the debtor's bankruptcy estate in the reorganized debtor; the amended plan, however, "preserved and retained" in the debtor's estate, for enforcement by the reorganized debtor:

> All avoidance actions under Sections 544, 545, 547, 548, 549, or 553(b) of the Bankruptcy Code,[17] all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of any indebtedness, and all other Claims owed to or in favor of [the debtor], to the extent not specifically compromised and released pursuant to this Plan ... including, without limitation, any and all claims of [the debtor] in the NFG Litigation *and any and all claims of [the debtor] against Paragon[, its predecessors, successors, assigns, or affiliated parties or entities].*[18]

*Id.* § 9.01 (emphasis added, underscored portions not present in the proposed plan).[19]

> have received under this Plan had such creditor's claim on account of such preference or fraudulent conveyance been Allowed.

This provision was also included in the proposed plan.

**18.** Section 1.49 of the Amended Plan defined "Paragon" as "Paragon Resources, Inc., a Delaware corporation, its predecessors, successors, assigns, or affiliated parties or entities."

**19.** As in the earlier plan, the amended plan also provided for the bankruptcy court's retention of jurisdiction over, *inter alia,* "all questions and disputes regarding title to the assets of the [debtor's estate]." *Amended Plan* § 10.01. The parties to the NFG Litigation objected to this retention of jurisdiction provision, arguing that it might be construed to invest the bankruptcy court with jurisdiction over their dispute, then pending in another forum. In response, the bankruptcy court ordered that this provision be made explicitly inapplicable to National Fuel. The court's order stated:

> this Court's retention of jurisdiction as to National Fuel shall be as provided for by the Bankruptcy Code and/or other provisions contained within the United States Code, and shall: ... (ii) not establish any exclusive jurisdiction not otherwise statutorily provided for,

After the plan proponents solicited the votes of the relevant claim and interest holders, the bankruptcy court held a hearing and, on 7 January 1992, confirmed the amended plan of reorganization.

On 9 January 1992, the reorganized debtor delivered a letter to Paragon, Majestic Energy Corp. ("Majestic"), and Majestic Farms, Inc. ("MFI"),[20] demanding payment within five days of amounts due and owing from these entities to the debtor for drilling and completion costs, lease operating expenses, and general and administrative costs.[21] Also on 9 January 1992, the reorganized debtor delivered a letter to Paragon demanding payment within five days of amounts due and owing, but not previously billed, for salt water disposal services. Paragon responded to the reorganized debtor's demands by requesting settlement negotiations but did not offer payment of the sums allegedly due; Majestic and MFI failed to respond. Thus, on 17 January 1992, the reorganized debtor brought an action in the bankruptcy court against Paragon, Majestic, and MFI to recover, for the benefit of the debtor's estate, the amounts allegedly due and unpaid—including amounts due from Paragon in connection with the Bass Island Drilling Program.

Also on 17 January 1992, the reorganized debtor brought an action in the bankruptcy court against Paragon and two partnerships formed by Paragon to hold its interests in the Bass Island Drilling Program: Paragon Private Drilling Program 1982 and Paragon Private Drilling Program 1982–2 ("the Paragon 1982 partnerships"). The reorganized debtor alleged that, approximately five months before the debtor filed its bankruptcy petition, the debtor assigned working interests in wells included in the Bass Island Project to the Paragon 1982 partnerships for less than reasonably equivalent consideration. The reorganized debtor concluded, therefore, that it was entitled to avoid these assignments and recover the working interests on behalf of the debtor's estate pursuant to 11 U.S.C. §§ 548, 550.

Around this same time, the bankruptcy court terminated the examiner's general engagement, retaining the examiner on behalf of the debtor's estate for the sole purpose of aiding the reorganized debtor's board of directors in prosecuting insider self-dealing claims.[22] Thereafter, at the behest of the reorganized debtor, the examiner took the deposition of CEI Production Co. ("CEI"), a corporation controlled by W.M. Templeton and beneficially owned by W.M. Templeton and his siblings, B.A. Templeton, S.T. Willett, and S.T. O'Brien.[23] The examiner sought to determine CEI's involvement in, *inter alia,* the acquisition of interests in the Amarex limited partnership by the debtor's insiders or affiliates.

Based in part upon the examiner's findings, the reorganized debtor filed a third action in the bankruptcy court on behalf of the debtor's estate on 24 February 1992. The reorganized debtor named as defendants to this action J.C. Templeton, W.M. Templeton, Joe H. Foy, Paragon, the Paragon 1982 partnerships, Majestic, MFI, CEI, Kilmont Energy, Inc. ("Kilmont"), the 1987 Humphrey Trust ("the Humphrey Trust"); Thom-

---

(iii) not divest or invest any other court of or with jurisdiction, ... and (vi) not be construed as consent by National Fuel to the jurisdiction of this Court in any proceeding. *In re TGX,* No. 90BK–10499 (Bankr.W.D.La. 6 January 1992) (overruling objection to proposed plan of reorganization by National Fuel Gas Distribution Corp., National Fuel Gas Supply Corp., and National Fuel Gas Co.).

20. According to the reorganized debtor, Majestic owns 95 percent of Paragon (the other 5 percent is owned by W.M. Templeton) and 100 percent of MFI. Also according to the reorganized debtor, each of these three defendants—Paragon, Majestic, and MFI—is a Delaware corporation authorized to do business in Louisiana, listing its business address as 401 Market Street, Suite 1100, Shreveport, Louisiana, and listing CT Corporation Systems of New Orleans as its agent for service of process.

21. The reorganized debtor also requested the payment of interest on these amounts.

22. On 3 February 1992, the bankruptcy court authorized the reorganized debtor's board of directors to pay the examiner's fees without prior court approval, but stated that the examiner's fees would "be deemed an administrative claim of [the debtor's] Chapter 11 proceeding."

23. Legal ownership of CEI was vested in W.M. Templeton and the Templeton Children Trusts ## 1–4.

as L. Kister, Harry V. Carlson, Robert Ted Enloe III, and W.A. Griffin ("the outside directors"); S.T. Willett, B.A. Templeton, and S.T. O'Brien; and the Templeton Children Trusts ## 1–4 ("the Children Trusts").[24] The reorganized debtor's complaint, as subsequently amended, set forth eight separate claims for relief, stemming from alleged breaches of fiduciary duties, aiding and abetting breaches of fiduciary duties, fraudulent transfers, fraud, conspiracy to defraud, breach of contract, and unjust enrichment.[25]

As the basis for its claims, the reorganized debtor set forth "illustrative but not exhaustive" examples of improper self-dealing by the debtor's former management. The reorganized debtor included in these examples transactions described in the examiner's earlier reports concerning the debtor's participation in the Bass Island Drilling Program, the debtor's provision of salt water disposal services, the debtor's participation in the Paragon/Templeton partnerships, the debtor's acquisition of an interest in the United Building Company, and the acquisition by insiders and affiliates of the debtor of interests in the Amarex limited partnership.[26] The reorganized debtor also described transactions not set forth in the examiner's previous reports, including claims associated with the debtor's pre-petition payment of allegedly excessive fees or salaries to J.C. Templeton, W.M. Templeton, and Joe H. Foy; excessive payments to insiders or affiliates for use of an airplane and leased office space; and purchase from insiders or affiliates of a controlling interest in Viscount Securities Corp.

The reorganized debtor's adversary proceedings were subsequently withdrawn to this court and consolidated for disposition.

Each of the defendants to these adversary proceedings has filed a motion to dismiss based upon subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), arguing that the post-confirmation jurisdiction of this court is limited to matters concerning the implementation and execution of the confirmed plan and that the plan contemplates neither the reorganized debtor's assertion of the claims set forth, nor the recovery sought, in these proceedings. Each of the defendants, except Foy and the outside directors, also filed a motion to dismiss based upon estoppel pursuant to Fed.R.Civ.P. 12(b)(6).[27] The court will evaluate these motions seriatim.

## II.

### A. *Subject Matter Jurisdiction*

▮ Federal jurisdiction over bankruptcy adversary proceedings is broad. *See* 28 U.S.C. 1334(b). Jurisdiction vests in the district court if "the outcome of th[e] proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 91 (5th Cir.1987) (citation omitted, emphasis in original). The result of this broad grant of jurisdiction is that before a plan of reorganization has been confirmed, nearly any suit by or against the debtor may be entertained in federal court: the outcome of nearly any such suit will have an effect upon the debtor's estate. *See* 1 Collier on Bankruptcy ¶ 3.01[1][c][ii] (Lawrence P. King et al. eds., 15th ed. 1994).

Confirmation, however, limits the effect an adversary proceeding may have on the debtor's bankruptcy estate. Upon confirmation, the rights and liabilities of the parties to the debtor's bankruptcy case are defined under

---

**24.** Also named defendants to this suit were Edward T. Cotham and Leonard Leon. The reorganized debtor settled with these defendants, however, and filed an agreed order of dismissal which bankruptcy judge signed on 8 December 1992.

**25.** The reorganized debtor's amended complaint also requested that the court disregard the form of certain corporate and trust defendants in order to ascertain the true nature of the transactions underlying its claims and grant appropriate relief.

**26.** Also included in these examples was a claim for business expense reimbursements made to J.C. Templeton, that had not been properly documented. This potential claim was set forth in the examiner's initial report.

**27.** To the extent the defendants' motion to dismiss based upon .estoppel refers the court to matters outside the pleadings it is treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b).

the plan of reorganization; the property dealt with by the plan is free and clear of all pre-petition claims and interests, and the debtor is discharged from all pre-petition debts. 11 U.S.C. § 1141(a)–(d). Thus, as the defendants point out, some courts have posited that a federal court's post-confirmation bankruptcy jurisdiction is effectively limited to "matters concerning the implementation or execution of a confirmed plan." *See, e.g., Goodman v. Phillip R. Curtis Enterprises, Inc.,* 809 F.2d 228, 232 (4th Cir.1987).[28]

■■■ Clearly, however, the broad statutory parameters of federal bankruptcy jurisdiction are unaffected by confirmation.[29] *See* 5 Collier on Bankruptcy ¶ 1142.01[1] (Lawrence P. King et al. eds., 15th ed. 1993) ("As long as a chapter 11 case is "open," there does not appear to be any limit on the court's jurisdiction under 28 U.S.C. § 1334(b) with respect to civil proceedings arising under title 11 or arising in or related to cases under title 11."); 11 U.S.C. § 350 (debtor's bankruptcy case is not closed until all property of the debtor's estate is fully administered).

Simply put, the district court may exercise jurisdiction over any bankruptcy adversary proceeding the outcome of which could conceivably have an effect upon the debtor's estate. *Wood,* 825 F.2d at 91 (citation omitted).

The defendants argue that since the confirmed plan does not direct the reorganized debtor's application of the proceeds of the present litigation, these proceeds will inure to the benefit of the reorganized debtor in the first instance and will have no effect upon the debtor's estate. The defendants overlook the fact that the reorganized debtor is attempting to enforce these claims *on behalf of the debtor's estate. See* 11 U.S.C. §§ 1123(b)(3)(B). As such, successful recovery would not vest in the reorganized debtor in the first instance. *See* 11 U.S.C. § 1141(b). So long as the plan properly retained these claims in the debtor' estate, recovery would vest in the estate and, absent provision in the plan, would remain subject to the claims and interests of the debtor's prepetition creditors and equity security hold-

**28.** The court in *Goodman* stated

> We need not decide whether [this effective] limitation ... is truly "jurisdictional." Whatever the technical effect of confirmation on the court's authority under the new Code, it obviously does not divest the bankruptcy court of all jurisdiction in the case.

809 F.2d at 232 (citation omitted).

**29.** The defendants place great emphasis upon the confirmed plan's failure to explicitly provide for the bankruptcy court's retention of jurisdiction over the instant proceedings. Under the superseded Bankruptcy Act, such provision was vital: unless the plan of reorganization explicitly provided for the retention of jurisdiction, the bankruptcy court was required to dismiss the debtor's bankruptcy case upon confirmation. *See* 11 U.S.C. §§ 767(4) (repealed 1978) (on confirmation, "the case shall be dismissed"), 757(7) (repealed 1978) (plan may include "provisions for retention of jurisdiction by the court until provisions of the arrangement, after its confirmation, have been performed"), 768 (repealed 1978) ("court shall retain jurisdiction if so provided in the arrangement."); *see also* 9 Collier on Bankruptcy ¶ 9.29[1] (James Wm. Moore et al. eds., 14th ed. 1978) ("The court retains jurisdiction after confirmation if so provided in the plan; the court has no discretion as to such retention.").

With the advent of the Bankruptcy Code (and the Bankruptcy Amendments and Federal Judgeship Act of 1984), however, the extent of federal jurisdiction over adversary proceedings became governed by 28 U.S.C. § 1334. *See* 1 Collier on Bankruptcy ¶ 3.01 (Lawrence P. King et al. eds., 15th ed. 1994); *cf.* 5 Collier on Bankruptcy ¶ 1142.01[1] (Lawrence P. King et al. eds., 15th ed. 1994) ("In sum, section 1142(a) appears generally to follow Chapter X [Bankruptcy Act] practice and should be interpreted in a manner consistent with Chapter X precedents."). Thus, the plan of reorganization cannot confer jurisdiction upon the bankruptcy court beyond that provided in § 1334, and the plan's failure to set forth explicitly that the bankruptcy court retains jurisdiction over the debtor's bankruptcy case does not divest the court of such jurisdiction. *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (2d ed. 1990) ("parties may not create or destroy jurisdiction by agreement or by consent"); *see also Highway Equip. Co. v. Alexander Howden Ltd. (In re Highway Equip. Co.),* 120 B.R. 910, 914 (Bankr. S.D.Ohio 1990); Benjamin Weintraub & Michael J. Crames, *Defining Consummation, Effective Date of Plan of Reorganization and Retention of Postconfirmation Jurisdiction: Suggested Amendments to Bankruptcy Code and Bankruptcy Rules,* 64 Am.Bankr.L.J. 245 (1990). *But cf. In re Allegheny Intern., Inc.,* 954 F.2d 167, 169 n. 1 (3rd Cir.1992); *J.E. Jennings v. William Carter Co. (In re J.E. Jennings),* 46 B.R. 167, 170 (Bankr. E.D.Pa.1985); Ronald W. Goss, *Defining the Scope of Retained Jurisdiction in Chapter 11 Plans,* 18 J.Contemp.L. 1 (1992).

ers.[30] 11 U.S.C. § 1141(c) ("the property *dealt with by the plan* is free and clear of all claims and interests." (emphasis added)).

The outcome of this litigation thus could conceivably affect the estate. *See Highway Equip. Co. v. Alexander Howden Ltd. (In re Highway Equip. Co.),* 120 B.R. 910, 913 (Bankr.S.D.Ohio 1990). At the least, the reorganized debtor's prosecution of the retained claims would bar subsequent prosecution on behalf of the estate. *See FDIC v. Majestic Energy Corp. (In re Majestic Energy Corp.),* 835 F.2d 87, 90 (5th Cir.1988) (bankruptcy jurisdiction properly invoked where "outcome could alter the debtor's ... options or freedom of action (either positively or negatively)"). Successful recovery, moreover, would affect the estate's ability to meet its obligations under the plan. *See Eubanks v. Esenjay Petroleum Corp.,* 152 B.R. 459, 464 (E.D.La.1993) ("Proceedings that have a conceivable effect on the debtor's ability to consummate the confirmed plan fall within the jurisdictional grant."); *Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.),* 111 B.R. 457, 462 (Bankr. S.D.N.Y.1990). *But cf. Finkelstein v. Transamerican Natural Gas Corp. (In re Transamerican Natural Gas Corp.),* 127 B.R. 800, 803 (S.D.Tex.1991) ("mere potential of a claim to increase or decrease the pool of funds available to a debtor, without more, is insufficient to create bankruptcy jurisdiction." (citation omitted)).

The issue remaining for decision is whether the plan properly retained the claims at issue on behalf of the debtor's estate. *See* 11 U.S.C. § 1123(b)(3)(B) (a plan may "provide for ... the retention and enforcement by the [reorganized debtor] ... of any [ ] claim or interest [belonging to the debtor or to the estate].").[31] As previously set forth, the plan at issue provided for the retention on behalf of the debtor's estate of:

> All avoidance actions under Sections 544, 545, 547, 548, 549, or 553(b) of the Bankruptcy Code, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of any indebtedness, and all other Claims owed to or in favor of [the debtor], to the extent not specifically compromised and released pursuant to this Plan ... including, without limitation, ... any and all claims of [the debtor] against Paragon[, its predecessors, successors, assigns, or affiliated parties or entities].

*Amended Reorganization Plan* § 9.01. The defendants argue that this reference to claims against Paragon is insufficient to encompass the breadth of claims presently being asserted by the reorganized debtor.

Utilizing principles of contract construction, the court looks to the information available to the parties to the debtor's bankruptcy case in order to determine the intended meaning of the phrase "any and all claims of [the debtor] against Paragon." *See Official Creditors Committee v. Stratford of Texas, Inc. (In re Stratford of Texas, Inc.),* 635 F.2d 365, 368 (5th Cir.1981) (The plan of reorganization "represents a kind of consent decree which has many attributes of a contract and should be construed basically as a contract.") (interpreting Bankruptcy Act); Restatement (Second) of Contracts § 212 cmt. b (1981) ("Any determination of meaning ... should only be made in the light of the relevant

---

**30.** If recovery is made in excess of the full amount of claims against and interests in the debtor's estate, the excess would obviously vest in the reorganized debtor as successor to the debtor.

**31.** The original purpose of this subsection was "to prevent the control of causes of action against the prior management and underwriters [of the debtor] from falling into the hands of the [reorganized] corporation which may be controlled by the prior management or underwriters." Alfred N. Heuston, *Corporate Reorganizations under the Chandler Act,* 38 Colum.L.Rev. 1199, 1214 n. 78 (1938) (citing 83 Cong.Rec.

11842 (1938) (statements of Congressman Chandler, referring to predecessor § 616(13) of the Bankruptcy Act (repealed 1978))). Thus, the Bankruptcy Act contemplated "that if, for example, prolonged investigation of particular causes of action against the previous management is found to be necessary, the submission of all other information and the formulation, confirmation and consummation of a plan [can still] be achieved." 6A Collier on Bankruptcy ¶ 10.22 (James Wm. Moore et al. eds., 14th ed. 1978); *see also DuVoisin v. East Tenn. Equity, Ltd. (In re Southern Indus. Banking Corp.),* 59 B.R. 638, 642 (Bankr.E.D.Tenn.1986).

evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties."). Specifically, the court draws upon the disclosure statement, served upon all parties voting on the plan, and the examiner's reports, filed of record in the debtor's bankruptcy case, as appropriate guides to interpreting the phrase at issue. *See* Restatement (Second) of Contracts § 201 cmt. b (1981) ("the context relevant to interpretation of a bargain is the context common to [the] parties.").

As in the plan, the disclosure statement refers to claims related to self-dealing narrowly, as claims against Paragon. The disclosure statement goes on, however, to refer the reader to the examiner's reports, which detail claims against many of the debtor's former insiders, directors, affiliates, and related entities. But again, these reports consistently refer to the debtor's claims as "the Paragon receivable and related transactions."[32] *See Third Interim Report By Examiner.* The court concludes, therefore, that at the time of confirmation, the parties to the debtor's bankruptcy case understood the phrase "any and all claims of [the debtor] against Paragon" to mean any and all claims related to pre-petition, insider self-dealing. The claims brought by the reorganized debtor fit within this definition and were properly retained under the plan. The court has subject matter jurisdiction over this suit. *See Highway Equip. Co.,* 120 B.R. at 913–14 ("The plan of debtors contemplates the present litigation[;] . . . the outcome of the litigation will have a direct effect upon the case[;] . . . [therefore] Defendants' motion to dismiss on the ground of lack of subject matter jurisdiction will be denied.").

### B. *Estoppel*

The defendants further argue that the reorganized debtor's failure (i) to provide a detailed description of the estate's claims in the disclosure statement and (ii) to schedule the instant claims as assets of the estate estop the reorganized debtor from prosecuting these claims on behalf of the debtor's estate. Summary judgment on this issue is appropriate only if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ Pursuant to the Bankruptcy Code, the debtor must provide the holders of claims and interests with a disclosure statement containing "adequate information." 11 U.S.C. § 1125(b). This statement must contain a schedule of the property of the debtor's estate. 11 U.S.C. § 521. Upon review of the documents filed in the debtor's bankruptcy case, the court concludes that disclosure statement and incorporated schedule of assets were sufficient to fulfill the debtor's burdens of disclosure. *See In re Metrocraft Publishing Serv., Inc.,* 39 B.R. 567, 568 (Bankr.N.D.Ga.1984).

■ Although the statement only briefly discussed the insider transactions at issue, it directed the reader to the examiner's reports for a more detailed description. Granted, the statement should have been updated to include the information contained in the examiner's 16 December 1991 report. Moreover, the debtor should have filed updated asset schedules listing these claims. The court cannot conclude, however, that the failure so to do was sufficiently egregious to estop the reorganized debtor from prosecuting the instant claims on behalf of the debtor's estate. *See Neptune World Wide Moving,* 111 B.R. at 461 ("Neither judicial estoppel nor equitable estoppel will apply in those cases where a debtor's disclosure statement and plan reveal that the debtor contemplated commencing post-confirmation recovery actions." (citation omitted)). *Cf. Hay v. First Interstate Bank of Kalispell, N.A.,* 978 F.2d 555, 557 (9th Cir.1992) (debtor's failure to communicate its pre-confirmation discovery of insider self-dealing to the bankruptcy court estopped post-confirmation prosecution); *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight,*

---

**32.** The use of this phrase apparently stems from the examiner's initial inquiry into the debtor's pre-petition management's self-dealing, documented in the examiner's initial report, which uncovered a significant, past-due receivable from Paragon Resources, Inc. *See Initial Report of Examiner* (Docket # 1643).

*Inc.),* 848 F.2d 414, 417 (3rd Cir.1988) (debtor's "deafening" silence in disclosure statement regarding post-confirmation prosecution of claims against creditor estopped debtor from asserting such claims); *Monroe County Oil Co. v. Amoco Oil Co.,* 75 B.R. 158, 162 (S.D.Ind.1987).

### III.

Accordingly, the court denies the defendants' motions.