**In the Matter of HOLLY'S, INC., Debtor.**

**HOLLY'S, INC., d/b/a Holiday Inn–East, Plaintiff,**

v.

**CITY OF KENTWOOD, Defendant.**

**Bankruptcy Case No. 91–84931.**
**Adv. No. 93–8530.**

United States Bankruptcy Court, W.D. Michigan.

Sept. 30, 1994.

Thomas C. Clinton, Grand Rapids, MI, for plaintiff Holly's, Inc., d/b/a Holiday Inn–East.

Daniel R. Kubiak, Grand Rapids, MI, for defendant City of Kentwood.

## OPINION REGARDING CITY OF KENTWOOD'S MOTION FOR SUMMARY JUDGMENT/TO DISMISS/TO ABSTAIN

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUES

This adversary proceeding raises a number of complicated issues. Does this court have jurisdiction to hear, and render a final order or judgment in, this adversary proceeding, which was filed after confirmation of the Debtor's chapter 11 plan of reorganization? Even if the court has jurisdiction over this adversary proceeding for the tax years 1989 through 1992, does the court have jurisdiction to determine the Debtor's 1993 tax liability, which was assessed *after* the Debtor's plan was confirmed?

Is the Debtor's request to determine its tax liability, pursuant to 11 U.S.C. § 505, tantamount to an objection to claim? If so, does the Debtor's failure to object to Kentwood's claims within the 120–day postconfirmation period provided by the plan constitute excusable neglect? If not, does the Debtor's failure to object to Kentwood's tax claims either prior to confirmation or within the

120–day limitation established by the confirmed plan bar the Debtor from now litigating its tax liability under § 505?

If the Debtor's adversary proceeding is not an objection to claim, is the Debtor now precluded, under the doctrines of either res judicata or estoppel, from commencing this adversary proceeding because it failed to preserve in its plan the right to initiate this postconfirmation proceeding? If not, should the court nonetheless abstain from hearing this adversary proceeding?

## II. FACTS

On September 13, 1991, Holly's, Inc. (the "Debtor") filed for relief under chapter 11 of the Bankruptcy Code.[1] On November 24, 1992, this court held a hearing on confirmation of the Debtor's Third Amended Plan of Reorganization Dated November 24, 1992 (the "Third Amended Plan"). On that day, the Order Confirming Debtor's Third Amended Plan of Reorganization Dated November 24, 1992 ("Plan Confirmation Order") was signed.

More than nine months later, on August 31, 1993, the Debtor filed its Motion for Determination of Tax Liability. The Debtor asked the court to enter an order, pursuant to § 505, to determine the Debtor's liability to the City of Kentwood ("Kentwood") for real property taxes on the Holiday Inn–East for the tax years 1989 through 1993. Motion at 1. In addition, the Debtor sought a stay of proceedings pending before the Michigan Tax Tribunal (the "MTT") involving appeals of tax assessments for the years 1991 through 1993.[2] *Id.* at 2.

On October 13, 1993, the Debtor's motion was converted into an adversary proceeding. *See* Order Converting Contested Matter (Motion for Determination of Tax Liability Re City of Kentwood) Into Adversary Proceeding. On November 16, 1993, the Debtor subsequently filed its Complaint to Determine Tax Liability (the "Complaint"), which reiterated the substance of the motion and requested a refund of any overpayment of taxes with interest. Kentwood filed its Answer to Debtor's Complaint (the "Answer") on December 14, 1993.

After filing for bankruptcy, the Debtor paid $386,725.47 in real property taxes on the Holiday Inn–East for tax years 1992 and 1993. *See* Affidavit of Roselyn Butterworth (the "Butterworth Affidavit"), ¶¶ 5–6 at 2–3. Kentwood claims that as of May 1, 1994 the Debtor owed another $643,427.73[3] in real property taxes on the Holiday Inn–East property. *See* Butterworth Affidavit, ¶¶ 1–6 at 1–3. The Debtor timely appealed Kentwood's real property tax assessments before the MTT for the years 1991, 1992, and 1993. *See* Complaint, ¶ 9 at 3; Answer, ¶ 9 at 2. Although it failed to timely appeal the tax assessments for the 1989 and 1990 tax years, the Debtor contests Kentwood's assessments for those years as well. Thus, the Debtor has asked this court, pursuant to § 505, to determine the Debtor's tax liability on the Holiday Inn–East property for the tax years 1989 through 1993. *See* Complaint.

On May 24, 1994,[4] Kentwood filed its Motion for Summary Judgment/To Dismiss/To

---

1. Unless otherwise noted, all statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101–1330, often referred to as the "Bankruptcy Code" or "Code". As general background, other facts pertaining to the Debtor's bankruptcy filing and the nature and operation of the Debtor's various businesses are set forth in a prior reported opinion. *See The Sumitomo Trust & Banking Co. v. Holly's, Inc. (In the Matter of Holly's, Inc.)*, 140 B.R. 643, 659–65 (Bankr.W.D.Mich.1992).

2. This court did not have to rule on the Debtor's request for a stay of the MTT proceedings. The Debtor and Kentwood submitted to the MTT a stipulated motion for adjournment of those proceedings. The MTT subsequently issued its Order Granting Parties' Stipulated Motion for Ad-

journment (the "MTT Adjournment Order"), in which it ordered that "Docket Nos. 164788 [tax years 1991 and 1992] and 193154 [tax year 1993] shall remain held in abeyance INDEFINITELY, pending resolution or dismissal of the tax liability determination action currently pending before the Bankruptcy Court." MTT Adjournment Order, December 2, 1993 at 1, attached as Exhibit B to Answer to Debtor's Complaint (capitalization in original).

3. This figure includes interest. *See infra* note 13.

4. Between December 14, 1993, when Kentwood filed its Answer, and May 24, 1994, when Kentwood filed its Motion for Summary Judgment/To Dismiss/To Abstain, the parties and this court were in the process of resolving the Debtor's

Abstain (the "Kentwood Summary Judgment/Dismissal Motion"). Kentwood asked the court to dismiss the Debtor's adversary proceeding, pursuant to FED.R.BANKR.P. 7012 or 7056, or, in the alternative, to abstain from determining the Debtor's tax liability for the tax years 1989 through 1993. This court held a hearing on the Kentwood Summary Judgment/Dismissal Motion on June 6, 1994, at which time it took the matter under advisement. Docket # 40.

## III. DISCUSSION

### A. Summary Judgment vs. Dismissal

■ In its Summary Judgment/Dismissal Motion, Kentwood asks this court to dismiss the Debtor's Complaint, pursuant to either FED.R.BANKR.P. 7012 or 7056. Kentwood did not specify the subsection of FED.R.BANKR.P. 7012 under which it seeks dismissal. The court assumes, based on the content of Kentwood's motion, that Kentwood seeks dismissal under FED.R.BANKR.P. 7012(b)(1): lack of jurisdiction over the subject matter. FED.R.BANKR.P. 7012(c), however, provides as follows:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

This court has considered matters outside the pleadings in its decision; thus, Kentwood's request for dismissal under FED. R.BANKR.P. 7012 should be treated as a motion for summary judgment. In addition, Kentwood's Summary Judgment/Dismissal Motion also requested this court to dismiss on the basis of FED.R.BANKR.P. 7056. Therefore, this court now turns to an examination of the standards governing motions for summary judgment.

FED.R.BANKR.P. 7056(c) provides the starting point for analyzing Kentwood's motion for summary judgment.

> The motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.BANKR.P. 7056(c). Kentwood filed its Summary Judgment/Dismissal Motion on May 24, 1994. It served that Motion on the Debtor's attorney on May 23, 1994. See Docket # 33 (Proof of Service). The court held a hearing on the Motion on June 6, 1994. Therefore, Kentwood served its Motion in accordance with FED.R.BANKR.P. 7056(c). The parties did not submit depositions or answers to interrogatories to the court for its consideration; thus, the court relies on the pleadings, the one affidavit filed by Kentwood, and the court's records[5] in the Debt-

motion to disqualify Kentwood's counsel. On December 21, 1993, the Debtor filed its Motion to Disqualify Clary, Nantz, Wood, Hoffius, Rankin & Cooper (the "Disqualification Motion") from representing Kentwood in the instant adversary proceeding. At a hearing held on January 11, 1994, the court directed the parties to file briefs on the disqualification issue. See Docket # 12. A Scheduling Order Regarding Motion to Disqualify Clary, Nantz, Wood, Hoffius, Rankin & Cooper was entered on January 12, 1994. Docket # 13. This court heard arguments and testimony on the Debtor's Disqualification Motion on March 22, 1994, at which time it took the matter under advisement. The Debtor and Kentwood, however, settled the Disqualification Mo-

tion prior to this court rendering a written opinion on the matter. See Stipulation and Order Resolving Motion to Disqualify Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Docket # 26.

5. "It is generally accepted that a Bankruptcy Judge may take judicial notice of the Bankruptcy Court's records." HON. BARRY RUSSELL, BANKRUPTCY EVIDENCE MANUAL § 201.5, at 162 (1994–95 ed.); see also Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 480 n. 3 (6th Cir.1992) (court may take judicial notice of prior bankruptcy proceeding when ruling on a motion for summary judgment or a motion to dismiss, pursuant to FED.R.BANKR.P. 7012(b)(6)).

or's chapter 11 bankruptcy case in rendering its decision on Kentwood's Summary Judgment/Dismissal Motion.

The Sixth Circuit in *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc. (In re Atlas Concrete Pipe, Inc.)*, 668 F.2d 905 (6th Cir. 1982) provides a succinct statement of the standards governing a court's decision to grant or deny a motion for summary judgment.[6]

> Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the [moving party] is entitled to judgment as a matter of law.... A court may not resolve disputed questions of fact in a summary judgment decision, ..., and if a disputed question of fact remains, the district court should deny the motion for summary judgment and proceed to trial.

*Id.* 908 (citations and footnote omitted). Kentwood's motion for summary judgment only requires the court to determine issues of law, not of fact. Therefore, this court must determine whether Kentwood is entitled to judgment as a matter of law, on the basis of a lack of subject matter jurisdiction, or the preclusive effects of the doctrine of res judicata.[7]

## B. Postconfirmation Jurisdiction

### 1. *The Analytical Framework*

Jurisdiction generally and bankruptcy jurisdiction particularly are among the most misunderstood and misapplied concepts in the law.[8]

■ The threshold question this court must address is whether it has jurisdiction to hear and decide the Debtor's request to determine its tax liability to Kentwood, pursuant to 11 U.S.C. § 505. Unfortunately, the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and Congress's response in the Bankruptcy Amendments and Federal Judgeship Act of 1984 resulted in an often confusing jurisdictional scheme. That confusion is magnified when the courts confront the issue of the bankruptcy court's postconfirmation jurisdiction.

■ Section 1334 of Title 28 of the United States Code defines subject matter jurisdiction for bankruptcy cases and proceedings.[9] Confirmation of the chapter 11 plan does not, and should not, render nugatory the language of 28 U.S.C. § 1334. In addition, nothing in the language of 28 U.S.C. § 1334 even remotely suggests that confirmation of a plan of reorganization in a chapter 11 case alters the basic jurisdictional analysis for bankruptcy cases and proceedings.

> So long as a chapter 11 case is "open," there does not appear to be any limit on the court's jurisdiction under 28 U.S.C. § 1334(b) with respect to civil proceedings arising under title 11 or arising in or related to cases under title 11.

5 COLLIER ON BANKRUPTCY ¶ 1142.01, at 1142–3 (Lawrence P. King ed., 15th ed. 1994) (footnote omitted). The Debtor's chapter 11 bankruptcy case has not been administratively closed. *See* 11 U.S.C. § 350(a); FED.

---

A court may take judicial notice at any stage in the proceeding. FED.R.EVID. 201(f).

6. *See General Electric Capital Corp. v. Hoerner (In the Matter of Grand Valley Sport & Marine, Inc.)*, 143 B.R. 840, 845–46 (Bankr.W.D.Mich.1992) for a detailed examination of the standards for granting or denying a party's motion for summary judgment.

7. As to Kentwood's request that this court abstain from rendering a decision on the Debtor's tax liability under § 505(a), *see infra* note 28. As to the Debtor's excusable neglect argument, *see infra* note 24.

8. *Harstad v. First American Bank (In re Harstad)*, 155 B.R. 500, 505 (Bankr.D.Minn.1993).

9. Specific provisions of the Bankruptcy Code itself may confer upon a bankruptcy court the power to take particular action once subject matter jurisdiction is established, pursuant to the provisions of 28 U.S.C. § 1334. The provisions of title 11, e.g., §§ 105(a) and 1142, however, do not independently confer subject matter jurisdiction on a bankruptcy court. *If* subject matter jurisdiction exists, pursuant to 28 U.S.C. § 1334, *then, and only then,* may a bankruptcy court exercise those *powers* conferred upon it by the provisions of the Bankruptcy Code.

R.BANKR.P. 3022.[10] Thus, this court does not confront the more difficult question of the extent, if any, of a bankruptcy court's subject matter jurisdiction after closing or dismissal of the underlying bankruptcy case. *See, e.g., Querner v. Querner (In the Matter of Querner),* 7 F.3d 1199 (5th Cir.1993) (closed chapter 13 case); *Fidelity & Deposit Co. of Maryland v. Morris (In re Morris),* 950 F.2d 1531 (11th Cir.1992) (dismissed chapter 11 case); *Walnut Assocs. v. Saidel,* 164 B.R. 487 (E.D.Pa.1994) (closed chapter 11 case); *In re Doty,* 129 B.R. 571 (Bankr.N.D.Ind.1991) (closed chapter 11 case).

■ Moreover, the court declines any invitation to render a decision on the limits of its subject matter jurisdiction on the basis of Article VIII of the Debtor's Third Amended Plan, which provides that after the effective date of the Plan the court only shall retain jurisdiction over those matters specified in Article VIII of the Plan. Third Amended Plan, Article VIII at 49. Such retention of jurisdiction provisions, though common in chapter 11 plans, are something of a misnomer. The parties to an agreement cannot confer subject matter jurisdiction upon a federal court. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982) (citations omitted) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant...."); *California v. LaRue,* 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972) (stating in a footnote that the parties could not confer jurisdiction on the Supreme Court or the federal district court by stipulation); *Harstad v. First American Bank (In re Harstad),* 155 B.R. 500, 507 n. 7 (Bankr.D.Minn.1993) ("It is axiomatic that parties cannot confer jurisdiction on a court by agreement."); *Unified Data Systems, Inc. v. Almarc Corn. (In re Almarc Corp.),* 94 B.R. 361, 365 (Bankr.

E.D.Pa.1988) (citations omitted) ("[P]arties cannot confer subject matter jurisdiction by agreement."); 1 NORTON BANKRUPTCY LAW AND PRACTICE 2D § 4.40 at 4–257 (William L. Norton, Jr., ed. 1994) ("Generally, jurisdiction cannot be conferred on a federal court or judge by virtue of consent of the parties, and can only be established by Act of Congress.").

■ A retention of jurisdiction provision may correctly state the court's postconfirmation jurisdiction over particular proceedings; however, the court determines its subject matter jurisdiction postconfirmation not on the basis of that retention of jurisdiction provision, but rather on the basis of 28 U.S.C. § 1334. *See Harstad v. First American Bank (In re Harstad),* 155 B.R. at 507 (footnote omitted) ("[N]either a plan of reorganization nor a court can substitute its ideas of section 1334 jurisdiction for what Congress has articulated."). For example, a bankruptcy court could not validly exercise subject matter jurisdiction to decide a proceeding that 28 U.S.C. § 1334 precluded it from hearing, *even if* the plan of reorganization provided that the court retained jurisdiction to hear such a proceeding postconfirmation. *Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 164 (7th Cir.1994) ("[T]he fact that the bankruptcy court, in the orders approving the bankruptcy sale and later in the plan of reorganization, purported expressly to assume jurisdiction to entertain such proceedings could not confer jurisdiction. A court cannot write its own jurisdictional ticket."). Furthermore, if 28 U.S.C. § 1334 conferred subject matter jurisdiction over a postconfirmation proceeding, the absence of reference to such a proceeding in the plan's retention of jurisdiction provision would not destroy the court's subject matter jurisdiction.[11]

[T]he plan of reorganization cannot confer jurisdiction upon the bankruptcy court beyond that provided in § 1334, and the

---

**10.** Local Bankruptcy Rule 19 for the Western District of Michigan provides as follows:

Unless the Court orders otherwise, Chapter 11 debtors shall petition the Court for a final decree upon substantial consummation of the plan. Such decree shall be entered if the case appears to be fully administered. Upon entry of the final decree, the Clerk shall close the case.

LOCAL BANKR.R. 19(c), WESTERN DISTRICT OF MICHIGAN (March 1, 1993).

**11.** The retention of jurisdiction provision in the Debtor's Third Amended Plan, however, might be relevant to the issue of res judicata, which is discussed *infra* at Part III.C. of this opinion.

**556**

plan's failure to set forth explicitly that the bankruptcy court retains jurisdiction over the debtor's bankruptcy case does not divest the court of such jurisdiction.

*TGX Corp. v. Templeton (In re TGX Corp.),* 168 B.R. 122, 130 n. 29 (W.D.La.1994) (citations omitted); *see also Unified Data Systems, Inc. v. Almarc Corp. (In re Almarc Corp.),* 94 B.R. at 365 ("[E]ven though the terms of a confirmed plan may be binding upon the debtor and its creditors, 11 U.S.C. § 1141; ..., that alone is insufficient to provide a jurisdictional source.); 1 Norton Bankruptcy Law and Practice 2d § 4.40, at 4–257 (William L. Norton, Jr., ed. 1994) ("[I]n a Chapter 11 case, post-confirmation jurisdiction of the Bankruptcy Court cannot be created or conferred by the confirmed plan of reorganization or the order of confirmation but exists post-confirmation only to the extent conferred by 28 USC § 157 and § 1334."). Therefore, in determining the limits of its postconfirmation subject matter jurisdiction, this court must first turn to 28 U.S.C. § 1334, not to the terms of the Debtor's confirmed Third Amended Plan.

 If subject matter jurisdiction exists, pursuant to 28 U.S.C. § 1334, then the bankruptcy court must determine whether the proceeding is core or noncore, related. *See* 28 U.S.C. § 157(b)(3). If the proceeding is core, then the bankruptcy court may enter a final order or judgment. *See* 28 U.S.C. § 157(b)(1). Absent consent of the parties, the bankruptcy court may not enter a final order or judgment in a noncore, related proceeding; the bankruptcy court has jurisdiction to hear the proceeding, but only may submit proposed findings of fact and conclusions of law to the district court, which conducts a *de novo* review. *See* 28 U.S.C. § 157(c)(1). Thus, the core/noncore determination under 28 U.S.C. § 157(b) and (c) implicates the bankruptcy court's power to render final orders or judgments; it is not a

determination that the bankruptcy court either possesses or lacks subject matter jurisdiction over a particular proceeding. In other words, if jurisdiction does not exist pursuant to 28 U.S.C. § 1334, § 157(b) does not provide an independent basis for the bankruptcy court exercising jurisdiction over a particular proceeding. *See Zerand–Bernal Group, Inc. v. Cox (In re Cary Metal Prods., Inc.),* 158 B.R. 459, 464 (N.D.Ill.1993), *aff'd,* 23 F.3d 159 (7th Cir.1994) ("§ 157(b) does not provide an independent source of jurisdiction, but merely allocates jurisdiction created by § 1334 between core and non-core proceedings.").

 In conclusion, this court has subject matter jurisdiction over the instant adversary proceeding if the proceeding is one arising under title 11, or arising in or related to a case under title 11. 28 U.S.C. § 1334(b). If the court determines that this proceeding falls outside the language of 28 U.S.C. § 1334, then the court may not render a decision on the merits.[12]

*2. Overview*

 Subject matter jurisdiction over a bankruptcy proceeding exists if the proceeding is one "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In determining whether it has jurisdiction, however, a bankruptcy court need only determine whether the proceeding falls *outside* the parameters of bankruptcy jurisdiction, as defined by 28 U.S.C. § 1334.

For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under," "arising in a case under," or "related to a case under," title 11. These references operate conjunctively to define the

---

**12.** Several courts have adopted a similar framework for analyzing the bankruptcy court's jurisdiction over proceedings instituted postconfirmation. *See Eubanks v. Esenjay Petroleum Corp.,* 152 B.R. 459, 462 (E.D.La.1993) (footnote omitted) ("Accordingly, it is necessary here to first determine whether Eubanks' adversary proceedings fall within the scope of 28 U.S.C. §§ 1334(a) and (b). Once that determination is made, then

it is proper to identify the proceedings as either 'core' or 'non-core but related' matters."); *Harstad v. First American Bank (In re Harstad),* 155 B.R. 500, 505–507 (Bankr.D.Minn.1993); *Zerand–Bernal Group, Inc. v. Cox (In re Cary Metal Prods., Inc.),* 152 B.R. 927 (Bankr.N.D.Ill.1993), *aff'd.* 158 B.R. 459 (N.D.Ill.1993), *aff'd,* 23 F.3d 159 (7th Cir.1994).

scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. *Wood v. Wood (In the Matter of Wood)*, 825 F.2d 90, 93 (5th Cir.1987); *accord Michigan Employment Security Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir.1991), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992); *Eubanks v. Esenjay Petroleum Corp.*, 152 B.R. 459, 463 n. 8 (E.D.La.1993). Therefore, so long as the proceeding is *related* to the underlying title 11 case, the bankruptcy court has subject matter jurisdiction over that proceeding.

### a. *1989–1992 Taxes*

■ On November 1, 1991, the Kent County Treasurer filed two proofs of claim in the amounts of $95,583.39 and $212,877.36, respectively, for 1989 and 1990 real property taxes owed on the Holiday Inn–East property. Claims Docket Nos. 71, 72. The Treasurer subsequently filed a proof of claim on August 20, 1992 in the amount of $214,456.72 for 1991 real property taxes on the Holiday Inn–East. Claims Docket No. 380.[13] In addition, the Debtor paid the 1992 real property taxes, which became due postpetition, as administrative expenses.[14] *See* 11 U.S.C. § 503(b)(1)(B), 507(a)(1); *see also* City of Kentwood's Brief in Support of Motion for Summary Judgment to Dismiss/Abstain [hereinafter "Kentwood's Summary Judgment/Dismissal Brief"] at 3. The Third Amended Plan treated Kentwood's claims as Class 3b impaired general property tax claims. Third Amended Plan at 8; *see* Disclosure Statement with Respect to Debtor's Amended Plan of Reorganization Dated September 25, 1992 [hereinafter "Disclosure Statement"] at 37; *see also* Memorandum of Law in Support of Bankruptcy Court Jurisdiction to Determine Tax Liability [hereinafter "Debtor's Jurisdiction Brief"] at 3; Kentwood's Summary Judgment/Dismissal Brief at 1. Per its Class 3b plan treatment, Kentwood was to retain the lien securing its claims and was to receive a secured note in the allowed amount of its claims. Third Amended Plan at 8.

■ The court concludes that it has subject matter jurisdiction over the instant adversary proceeding for the tax years 1989 through 1992 because resolution of this proceeding relates to the Debtor's title 11 case. Resolution of the Debtor's request for relief under § 505(a) for the tax years 1989 through 1992 involves claims made by Kentwood against the Debtor's bankruptcy estate. *See* §§ 101(5), (12), and 541(a). The Debtor provided the terms of payment for Kentwood's tax claims in Class 3b of the Third Amended Plan. "The enforcement or interpretation of plan provisions are integral to the bankruptcy case." *In re Terracor*, 86 B.R. 671, 677 (D.Utah 1988). This adversary proceeding, as it relates to tax years 1989 through 1992, requires the court to interpret and enforce Kentwood's rights, if any, against the Debtor under the terms of the Third Amended Plan. Therefore, this court has subject matter jurisdiction over the Debtor's request for relief, pursuant to

---

**13.** Proof of Claim Nos. 71 and 72 state the Debtor's liability for 1989 and 1990 as of November, 1991. Proof of Claim No. 380 states the Debtor's 1991 tax liability as of August, 1992. *Cf.* Butterworth Affidavit, ¶¶ 2–4 at 1–2; *see supra* Part II of this opinion. All three proofs of claim provide for "additional interest at 1% per month (12% per annum) and 4% administration fee" on the underlying real property tax claim. Claims Docket Nos. 71, 72, and 380. For purposes of this opinion, however, the court need not calculate the amount of any real property taxes owed by the Debtor to Kentwood. This opinion is limited to issues of law raised by the parties either in defense of or in opposition to Kentwood's Summary Judgment/Dismissal Motion.

The court notes that the Kent County Treasurer, not the City of Kentwood, filed the three proofs of claim for real property taxes for 1989 through 1991 on the Holiday Inn–East. Michigan law authorized the Kent County Treasurer to do so on behalf of Kentwood. *See generally* MICH.COMP.LAWS ANN. §§ 211.55 through 211.59 (West 1994). Thus, the court considers Claim ## 71, 72, and 380 to be those of Kentwood. The parties have not raised this as an issue in their pleadings or briefs.

**14.** The Debtor still contests the amount of the 1992 real property tax assessment but argues that it was required to pay these taxes, both by order of this court and by virtue of the rules of appellate procedure governing Michigan Tax Tribunal proceedings. *See* Holly's Reply Memorandum of Law in Support of Bankruptcy Court Jurisdiction to Determine Tax Liability at 3 n. 2.

§ 505(a), for the tax years 1989 through 1992.[15]

■ In addition, this adversary proceeding, as it relates to tax years 1989 through 1992, requires the court to interpret and possibly apply § 505(a) of the Bankruptcy Code. Section 505(a) states that unless a tax liability previously has been contested and adjudicated by a tribunal of competent jurisdiction, the bankruptcy court "may determine the amount or legality" of that tax. The policy underlying § 505(a) "is the protection of the estate from a tax liability that a negligent or indifferent debtor failed to challenge." *Marcellus Wood & Trucking, Inc. v. Michigan Employment Security Comm'n (In re Marcellus Wood & Trucking, Inc.)*, 158 B.R. 650, 654 (Bankr.W.D.Mich.1993). In a chapter 11 case, § 505(a) affords some protection to creditors against incorrect preconfirmation tax liabilities that unduly erode the amount of assets in the estate that are available for distribution pursuant to the plan.

■ The rights created under § 505(a), however, exist only by virtue of the Bankruptcy Code; they do not exist outside the context of a bankruptcy case. Therefore, if the bankruptcy court lacks subject matter jurisdiction over a § 505(a) proceeding involving preconfirmation tax liabilities, the debtor has effectively lost its right to invoke § 505(a). A state court may not hear a debtor's § 505(a) proceeding because such an action exists only within the confines of a bankruptcy case.[16] A bankruptcy court ultimately may decide not to determine the amount or legality of a tax. *See Marcellus Wood & Trucking, Inc. v. Michigan Employment Security Comm'n (In re Marcellus Wood & Trucking, Inc.)*, 158 B.R. at 654

(The debtor's right to review of its tax liability pursuant to § 505(a)(1) is discretionary.). Such a determination on the merits, however, is not the equivalent of a determination, at the outset of litigation, that the court lacks subject matter jurisdiction over the § 505(a) proceeding. This court believes that a proceeding to determine the Debtor's preconfirmation tax liability pursuant to § 505(a) is *at least related*[17] to the Debtor's title 11 case because it invokes a right created by the Bankruptcy Code and enforceable only within the confines of a bankruptcy case.

■ The court is aware that this adversary proceeding technically does not fit within the judicially created definition of "related to" proceedings, which looks for some conceivable impact of the proceeding on administration of the bankruptcy *estate*. *See Wood v. Wood (In the Matter of Wood)*, 825 F.2d 90, 93 (5th Cir.1987); *Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 634 (6th Cir.1986); *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). Upon confirmation of the plan, however, the property of the estate revests in the debtor, except as otherwise provided for in the plan or order confirming the plan. 11 U.S.C. § 1141(b). Thus, most proceedings initiated postconfirmation, even if involving preconfirmation claims, would not affect the *bankruptcy estate per se*, absent reservation of those causes of action in the plan.

Nonetheless, this court's determination that it has subject matter jurisdiction over the Debtor's request for relief under § 505(a) for the tax years 1989 through 1992 does not do violence to the jurisdictional provisions of 28 U.S.C. § 1334. First, the "conceivable impact on the bankruptcy estate" definition is of judicial making. Neither the Bankrupt-

---

15. This conclusion does *not* mean that an appropriate state tribunal is deprived of jurisdiction over the proceeding. It also does not mean that the bankruptcy court necessarily will render a decision on the merits. A court may have subject matter jurisdiction over a dispute, but the doctrine of res judicata, for example, may bar the parties from relitigating the dispute. *See infra* Part III.C. of this opinion.

16. Of course, a debtor may contest tax liabilities in other forums pursuant to otherwise applicable state and federal laws. Nonetheless, Congress

conferred an additional forum—the bankruptcy court—for the possible litigation of certain preconfirmation tax liabilities. If the bankruptcy court lacks subject matter jurisdiction over § 505(a) proceedings, then a debtor has lost a right conferred by Congress by virtue of the Bankruptcy Code.

17. In fact, this adversary proceeding to determine the Debtor's tax liability for the years 1989 through 1992, pursuant to § 505(a), is one arising under title 11. *See* 28 U.S.C. § 1334(b).

cy Code nor title 28 defines the term "related to." The legislative history likewise provides no guidance as to the limits of "related to" jurisdiction. "There is little legislative history of the present section 1334." *Kelley v. Nodine (In re Salem Mortgage Co.),* 783 F.2d 626, 632 (6th Cir.1986). In addition, beyond expounding on the *breadth* of bankruptcy court jurisdiction in general, Congress did not bother to define the term "related to" during consideration of the bills that formed the basis for 28 U.S.C. § 1471, the predecessor to 28 U.S.C. § 1334.[18] *See, e.g.,* H.R.REP. No. 595, 95th Cong., 2d Sess. 445–46 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6401. As a result, the task of defining "related to" fell to the courts.

Second, the test was fashioned by the courts in the context of *preconfirmation* proceedings. A test that measures the conceivable impact of a proceeding on the administration of the debtor's bankruptcy estate makes sense in the context of preconfirmation proceedings. That same test, however, essentially reduces the bankruptcy court's postconfirmation jurisdiction to causes of action retained in the estate by the plan of reorganization. As a result, this court strongly suspects that subject matter jurisdiction over postconfirmation proceedings was not considered in the development of the "conceivable impact on the bankruptcy estate" test.

▪ Third, nothing in the Bankruptcy Code, title 28, or the legislative history compels the conclusion that revesting of the property of the estate, pursuant to § 1141(a), significantly curtails the scope of subject matter jurisdiction over bankruptcy proceedings postconfirmation. Of course, a debtor may provide in the plan for retention of a cause of action in the bankruptcy estate, *see* § 1123(b)(3)(B); thus, after confirmation, the cause of action does not vest in the debtor, *see* § 1141(b), and the postconfirmation proceeding to resolve the cause of action could have a conceivable impact on the estate. However, the Bankruptcy Code, unlike the Bankruptcy Act, does not premise subject matter jurisdiction over postconfirmation

proceedings upon express reservation provisions in the plan of reorganization.

Under the superseded Bankruptcy Act, ... unless the plan of reorganization explicitly provided for the retention of jurisdiction, the bankruptcy court was required to dismiss the debtor's bankruptcy case upon confirmation. *See* 11 U.S.C. § 767(4) (repealed 1978) (on confirmation, the "case shall be dismissed"), 757(7) (repealed 1978) (plan may include "provisions for retention of jurisdiction by the court until provisions of the arrangement, after its confirmation, have been performed"), 768 (repealed 1978) ("court shall retain jurisdiction if so provided in the arrangement."); *see also* 9 Collier on Bankruptcy ¶ 9.29[1] (James Wm. Moore et al. eds., 14th ed. 1978) ("The court retains jurisdiction after confirmation if so provided in the plan; the court has no discretion as to such retention.").

*TGX Corp. v. Templeton (In re TGX Corp.),* 168 B.R. 122, 130 n. 29 (W.D.La.1994). Such retention of jurisdiction provisions over postconfirmation proceedings were viewed as necessary under the Bankruptcy Act because confirmation resulted in a dismissal of the case. Under the Bankruptcy Code, however, confirmation does not result in dismissal of the underlying bankruptcy case.

▪ Finally, in the Bankruptcy Reform Act of 1978, Congress intended to significantly expand the scope of bankruptcy subject matter jurisdiction. In enacting the Bankruptcy Reform Act of 1978, Congress expressed concern over the jurisdictional limitations of the prior Bankruptcy Act.

The Report filed by the Senate Committee on the Judiciary shows that it shared the House's concerns over the limited jurisdiction of prior law, *see* S.REP. No. 989, *supra* note 15, at 17–18, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 5803–04, and intended, like the House Committee, to make such a broad jurisdictional grant as to "leave no doubt as to the scope of the jurisdiction over disputes to be exercised by the bankruptcy court." The emphatic

---

**18.** The text of 28 U.S.C. § 1334(a) and (b) is virtually identical to that of 28 U.S.C. § 1471(a) and (b). *See Kelley v. Nodine (In re Salem Mort-* *gage Co.),* 783 F.2d 626, 627 n. 1, 628 n. 4, 633 n. 17 (6th Cir.1986).

terms in which the jurisdictional grant is described in the legislative history, and the extraordinarily broad wording of the grant itself, leave us with no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases.

*Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 633–34 (6th Cir.1986) (footnote omitted). The Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) did not require Congress to alter the outer limits of bankruptcy subject matter jurisdiction.

Because *Marathon* did not compel Congress to reduce the scope of bankruptcy jurisdiction, it seems plain that Congress intended no change in the scope of jurisdiction set forth in the 1978 Act when it later enacted section 1334 of the 1984 Act.

*Wood v. Wood (In the Matter of Wood )*, 825 F.2d 90, 93 (5th Cir.1987). Congress intended a broad, rather than a limited, grant of subject matter jurisdiction over bankruptcy proceedings. Exercising subject matter jurisdiction over this adversary proceeding for the tax years 1989 through 1992 is consistent with that Congressional policy.

This court concludes that the Debtor's adversary proceeding to determine its tax liability for years 1989 through 1992 is related to the Debtor's title 11 case. First, this proceeding requires the court to interpret and enforce the provisions of the confirmed Third Amended Plan and to determine Kentwood's rights, if any, against the Debtor for the tax years 1989 through 1992 under the terms of that confirmed Plan. Second, a proceeding to determine the Debtor's preconfirmation tax liability, pursuant to § 505(a), is at least related to the Debtor's title 11 case because it invokes a right created by the Bankruptcy Code and enforceable only within the confines of a bankruptcy case. Therefore, this court has subject matter jurisdiction over the instant adversary proceeding for the tax years 1989 through 1992.

b. *1993 Taxes*

i. Preconfirmation or Postconfirmation Liability?

■ The first issue this court must address is whether the 1993 real property taxes are a preconfirmation or a postconfirmation liability. The real property taxes for 1993 were assessed on December 31, 1992. *See* MICH.COMP.LAWS ANN. § 211.2(2). Although the Debtor obtained confirmation of the Third Amended Plan on November 24, 1992, the Plan did not become effective until December 31, 1992. The Debtor claims that according to FED.R.BANKR.P. 9006(a), "December 31, 1992 would not be counted as a postconfirmation day." Debtor's Jurisdiction Brief at 11. The Debtor apparently argues that since December 31, 1992 would not be a a postconfirmation day, taxes assessed on that day would not be postconfirmation liabilities and, thus, the bankruptcy court could assert subject matter jurisdiction over a dispute about those taxes.

■ Under Michigan law, real property taxes are assessed on December 31 of the year immediately preceding the relevant tax year. Thus, real property taxes for 1993 were assessed on December 31, 1992, which was deemed the tax day. MICH.COMP.LAWS ANN. § 211.2(2) (West 1994); *see also Watervliet Paper Co. v. City of Watervliet (In re Shoreham Paper Co.)*, 117 B.R. 274, 275–76 (Bankr.W.D.Mich.1990). On December 1, 1993, a lien arose to secure payment of those taxes. *See* MICH.COMP.LAWS ANN. 211.40 (West 1994); *see also Watervliet Paper Co. v. City of Watervliet (In re Shoreham Paper Co.)*, 117 B.R. at 275 ("Pursuant to Michigan law, 1988 taxes were assessed on December 31, 1987 (tax day). And in 1988, real property taxes became due and payable and a lien arose to secure their collection on December 1, 1988 (lien day)."). Therefore, real property taxes on the Holiday Inn–East were not even *assessed* until December 31, 1992.

By December 31, 1992, however, the Debtor already had obtained confirmation of its Third Amended Plan. Confirmation occurred on November 24, 1992. The effective date was December 31, 1992. *See* Debtor's Jurisdiction Brief at 11; City of Kentwood's Brief in Reply to Holly's Memorandum of Law in Support of Bankruptcy Jurisdiction to Determine Tax Liability at 11–12. The Debtor argues that because the Third

Amended Plan inserted several conditions to occurrence of the effective date, the Plan did not take effect until satisfaction of those conditions. As a result, it is asserted the bankruptcy estate still existed on December 31, 1992, when Kentwood assessed the Debtor's real property taxes for 1993. According to the Debtor, since the estate still existed, the 1993 taxes are not a postconfirmation liability of the Debtor; therefore, this court may properly exercise subject matter jurisdiction over the 1993 real property tax liability. Debtor's Jurisdiction Brief at 11–12.

The Debtor's argument, though appealing on its surface, suffers from a fatal flaw: the confirmation date is *not* the effective date. The facts of the instant adversary proceeding highlight the dangers of the Debtor's argument.

Kentwood did not assess the Debtor's real property taxes for 1993 until December 31, 1992. Thus, Kentwood could not have filed a proof of claim in the Debtor's bankruptcy proceeding for the 1993 taxes. In fact, the Third Amended Plan does not cover 1993 taxes because those taxes had not yet been assessed. Section 1141(d)(1) of the Bankruptcy Code states that except as provided to the contrary by the terms of the plan, confirmation discharges the Debtor from all *preconfirmation* debts, whether or not a proof of claim was filed for those debts. While the Debtor's Third Amended Plan did delay the Debtor's discharge until the effective date, the Third Amended Plan did not state that all debts incurred prior to the *effective date* were discharged.[19] Moreover, the Third Amended Plan *could not* have done so. Section 1141(d)(1) allows the Plan to *except* certain preconfirmation debts from discharge; it does not empower the Debtor to rewrite the

Code and discharge debts that arise postconfirmation.

This analysis comports with common sense and notions of due process. For example, suppose the only debt owed by the Debtor to Kentwood were one arising on the effective date of the Third Amended Plan. Under this scenario, Kentwood would have had its debt discharged without any notice of the discharge. Kentwood would not have been scheduled by the Debtor. After all, how could the Debtor schedule a creditor that did not even exist at the time of the bankruptcy filing? In addition, Kentwood would not have filed a claim by the bar date established by the bankruptcy court. *See* FED. R.BANKR.P. 3003(c)(2), (3). As a result, Kentwood would not have been able to vote on the plan of reorganization or object to the fact that the plan of reorganization would seek to discharge its prospective debt without providing Kentwood with the right to any payment on that debt.

■ ▇▇▇ Thus, this court concludes that the Bankruptcy Code establishes the date of confirmation, not the effective date, as the post-filing cleavage date for chapter 11 dischargeable claims. Any claim that arises *after* confirmation is *by definition* a postconfirmation claim. Delaying or making conditional the operation of the effective date or the Debtor's discharge does not alter the date of confirmation and the nature of the claims that arise after that date.

Since the Debtor's 1993 real property taxes were not assessed until December 31, 1992, they are *postconfirmation* liabilities. The real issue facing this court is whether it may exercise subject matter jurisdiction over a postconfirmation liability of the Debtor.[20]

---

**19.** Article IX.A. of the Debtor's Third Amended Plan provided as follows:

> *Discharge.* The rights afforded to claimants and interest holders by this Plan shall be in exchange for and in complete release, satisfaction and discharge of all claims of any nature whatsoever, against Debtor and its agents, and, on the Effective Date, all such claims shall be released, satisfied and/or discharged in full, ..., and all claimants and interest holders shall be forever precluded from asserting against any of the aforesaid entities or against any of the assets or properties of Debtor, any

claim based upon any act or omission, transaction or other activity of any kind or nature by or of Debtor and its agents, that occurred *prior to the Confirmation Date.*
Third Amended Plan, Art. IX.A. at 50. (emphasis added).

**20.** The Debtor's argument implies that the court would not have subject matter jurisdiction over postconfirmation liabilities. After all, in its Jurisdiction Brief, the Debtor does not claim that the court has jurisdiction over postconfirmation liabilities; rather, the Debtor argues that the 1993 tax liability arose on a date that should not

#### ii. Subject Matter Jurisdiction—Postconfirmation Liabilities

■ This court does not have subject matter jurisdiction over the instant adversary proceeding for the *1993 tax year* because resolution of that dispute does not relate to the Debtor's title 11 case. The 1993 tax liability arose postconfirmation. As a result, it was never scheduled by the Debtor and Kentwood never had the opportunity to file a proof of claim. The 1993 tax liability was never considered by the Debtor and Kentwood during the plan preparation or confirmation process, and the Third Amended Plan does not provide for payment of the 1993 taxes. Accordingly, this adversary proceeding, as it relates to the 1993 tax year, does not require the court to interpret or enforce Kentwood's rights, if any, against the Debtor under the terms of the Third Amended Plan.

■ In addition, even though § 505(a) speaks in broad terms, it does not grant a bankruptcy court subject matter jurisdiction over postconfirmation tax years. Section 505(a) is not an independent grant of jurisdiction. *See supra* note 9. Moreover, this court refuses to read § 505(a) so broadly as to allow reorganized debtors to use the bankruptcy courts as tax resolution forums for *any* future tax year, simply because the debtor *once* filed for bankruptcy. A bankruptcy court does not have subject matter jurisdiction to resolve postconfirmation tax liabilities. *See In re Maley,* 152 B.R. 789, 792 (Bankr. W.D.N.Y.1992); *Allis–Chalmers Corp. v. Goldberg (In re Hartman Material Handling Systems, Inc.),* 141 B.R. 802, 812–13 (Bankr.S.D.N.Y.1992). In fact, bankruptcy courts, in general, should not exercise subject matter jurisdiction over *any* postconfirmation liability. *Cf. Finkelstein v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.),* 127 B.R. 800, 804 (S.D.Tex.1991) (court rejected debtor's argument that a large judgment against the debtor in litigation arising out of postconfirmation activities might affect the debtor's ability to satisfy its creditors; court noted that such an argument would draw into the bankruptcy court any possible breach of contract action, regardless of how unrelated the litigation was to the former bankruptcy estate); *Pioneer Investment Servs. Co. v. The Cain Partnership, Ltd. (In re Pioneer Investment Servs. Co.),* 141 B.R. 635, 642 (Bankr. E.D.Tenn.1992) ("This court will not involve itself in matters related to breaches of the Colonial Lease alleged to have occurred after confirmation of Pioneer's Plan on October 19, 1990.").

In conclusion, this court does not have subject matter jurisdiction over the instant adversary proceeding for the 1993 tax year. The Debtor has filed an appeal of its 1993 Kentwood tax liability with the Michigan Tax Tribunal. In December of 1993, the MTT issued an order holding in abeyance the MTT appeals of the Debtor's 1991–1993 tax years "pending resolution or dismissal of the tax liability determination action currently pending before the Bankruptcy Court." MTT Adjournment Order at 1, attached as Exhibit B to Answer; *see supra* note 2. Since the parties never had the opportunity to litigate any issues in this court with regard to the 1993 tax liability, they are not barred from now doing so before the MTT. *See infra* Part III.C.

#### 3. *Core/Noncore, Related Proceedings*

■ Since this court may exercise subject matter jurisdiction over this adversary proceeding with regard to the 1989 through 1992 tax years, it next must determine whether it may render a final order or judgment. That determination rests on the difference between core and noncore, related proceedings. *See* 28 U.S.C. 157(b), (c).[21]

This adversary proceeding is a core proceeding. It involves a right afforded the Debtor by virtue of the Bankruptcy Code. Section 505(a) does not exist independent of

---

be considered a postconfirmation day. *See* Debtor's Jurisdiction Brief at 11. Nonetheless, this court must conduct an independent analysis to determine if it has subject matter jurisdiction to determine postconfirmation real property liabilities of the Debtor.

21. A core/noncore, related determination is not necessary with regard to the 1993 tax year because 28 U.S.C. § 157 does not serve as an independent basis for subject matter jurisdiction.

bankruptcy proceedings. *See supra* Part III.B.2.a. As such, a proceeding under § 505(a) is one that is core or central to the bankruptcy case. In addition, the Debtor's request for relief under § 505(a) essentially amounts to an objection to Kentwood's tax claims; 28 U.S.C. § 157(b)(2)(B) provides that "allowance or disallowance of claims against the estate" are core proceedings.

Therefore, this court concludes that the Debtor's request, pursuant to § 505(a), for a determination of its 1989 through 1992 tax liability to Kentwood is a core proceeding. As such, this court may enter a final order or judgment, subject to review under 28 U.S.C. § 158.

## C. Res Judicata

■ In its Summary Judgment/Dismissal Brief, Kentwood argues that the doctrine of res judicata bars the Debtor from now contesting its 1989 through 1992 tax liability to Kentwood. Kentwood's Summary Judgment/Dismissal Brief at 4–13. An examination of the judicially created doctrine of res judicata and the implications, if any, of that doctrine is required.

■ Res judicata[22] or claim preclusion is a doctrine fashioned by the courts. The rule [of res judicata] provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but *as to any other admissible matter which might have been offered for that purpose.*"

*Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (citation omitted) (emphasis added). Res judicata discourages repetitive

suits, saves judicial time and resources, and encourages parties to rely on the results of final adjudications. *See id.; Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 480 (6th Cir.1992) *cert. denied,* —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993); *Hoffman v. First National Bank (In re Hoffman),* 99 B.R. 929, 936 (N.D.Iowa 1989). The doctrine of res judicata consists of four elements.

1. A final decision on the merits in the first action by a court of competent jurisdiction;

2. The second action involves the same parties, or their privies, as the first;

3. The second action raises an issue actually litigated or which should have been litigated in the first action;

4. An identity of the causes of action.

*Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d at 480 (citations omitted). The court must find all four elements present in order to dismiss a cause of action based on the doctrine of res judicata.

Element one of the four-part test for res judicata is satisfied in this adversary proceeding. The Debtor filed for relief under chapter 11 on September 13, 1991. In November of 1991 and August of 1992, the Kent County Treasurer filed proofs of claim for real property taxes on the Holiday Inn–East property for the years 1989 through 1991. *See* Claims Docket Nos. 71, 72 and 380. In addition, the Debtor paid the 1992 real property taxes, which became due postpetition, as administrative expenses.[23] *See* 11 U.S.C. § 503(b)(1)(B), 507(a)(1); *see also* Kentwood's Summary Judgment/Dismissal Brief at 3. The Third Amended Plan treated Kentwood's claims as Class 3b impaired general property tax claims. Third Amended Plan at 8; *see* Disclosure Statement at 37;

---

**22.** Res judicata is distinct from collateral estoppel. With collateral estoppel or issue preclusion, the second action between the same parties is upon a different cause or demand, ... In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."

*Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597–98, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (citations omitted). *See also Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 480 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993).

**23.** *See supra* note 14.

*see also* Debtor's Jurisdiction Brief at 3; Kentwood's Summary Judgment/Dismissal Brief at 1. This court signed an order confirming the Debtor's Third Amended Plan on November 24, 1992. *See* Plan Confirmation Order.

■ Except as provided to the contrary in the Third Amended Plan, confirmation of the Plan revested the property of the estate in the Debtor and discharged all preconfirmation debts against the Debtor. *See* 11 U.S.C. §§ 1141(b), (d)(1). Confirmation also bound the Debtor and Kentwood to the terms of the confirmed Third Amended Plan. *See* 11 U.S.C. § 1141(a). "Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d at 480 (citations omitted). Thus, this court's Plan Confirmation Order constituted a final judgment on the merits by a court of competent jurisdiction.

■ Element two of res judicata requires the *second* action to involve the same parties, or their privies, as the *first.* The instant adversary proceeding to determine the Debtor's tax liability for years 1989 through 1992 is the second action; the Debtor's chapter 11 case was the first. This court need not address the more difficult issue of who satisfies the definition of a privy to the parties in the first action. *See Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d at 480–82. Both the first and second causes of action involve identical parties—Kentwood and the Debtor.

■ The facts underlying this adversary proceeding make a determination on the third element of res judicata more complicated. The Debtor never *actually* litigated its

tax liability for the years 1989 through 1992 prior to confirmation of its Third Amended Plan. Nonetheless, the doctrine of res judicata does not require an actual litigation; it also bars a party from raising issues in the second cause of action that it should have litigated in the first cause of action.

Although the Debtor obviously disagreed with the amount of tax assessed by Kentwood against the Holiday Inn–East (as shown by this instant adversary proceeding), the Debtor never objected to the claims filed by Kentwood in the Debtor's chapter 11 case. The terms of the Third Amended Plan, which bind the Debtor under § 1141(a), provided the Debtor with an additional 120 days *after* the effective date to object to "any claim asserted against the estate." Third Amended Plan, Article IV at 41. The Kent County Treasurer filed proofs of claim for 1989 and 1990 real property taxes on the Holiday Inn–East on November 1, 1991; on August 20, 1992, the Treasurer filed a proof of claim for 1991 real property taxes. Claims Docket Nos. 71, 72, and 380. The 120-day postconfirmation claims objection period terminated at the end of April, 1993. That meant that the Debtor had eighteen months (November 1, 1991 until the end of April, 1993) to file an objection to the 1989 and 1990 claim for taxes on the Holiday Inn–East, and eight months (August, 1992 until the end of April, 1993) to object to the 1991 real property taxes on the Holiday Inn–East.

■ The Bankruptcy Code provides that a proof of claim is deemed allowed absent objection by a party in interest. *See* 11 U.S.C. § 502(a). The Debtor's failure to object to the proofs of claim for taxes on the Holiday Inn–East means that those claims have been deemed allowed in the bankruptcy case.[24]

---

24. The Debtor did not file its § 505 motion until August 31, 1993, which means such a motion was untimely if considered an objection to claim. This court rejects the Debtor's argument that its late filing of the § 505 motion constituted excusable neglect under Fed.R.Bankr.P. 9006(b). See Debtor's Jurisdiction Brief at 8–11.

Bankruptcy Rule 9006(b)(1) provides, in pertinent part, as follows:

[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by

order of court, the court for cause shown may at any time in its discretion ... (2) *on motion made* after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed.R.Bankr.P. 9006(b)(1) (emphasis added). As a procedural matter, the Debtor has filed no motion asking this court to permit a late-filed objection to claim. *See Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1492, 123 L.Ed.2d 74 (1993) (unsecured creditors filed a

■ In addition, § 1141(a) of the Code provides that the plan is binding upon not only the creditors but also the debtor. Thus, any payment to Kentwood, pursuant to the terms of the Third Amended Plan, for 1992 taxes as an administrative expense claim became final upon expiration of the period to object to claims. *See* 11 U.S.C. § 1141(a). Kentwood could not request additional taxes from the Debtor for 1992; that claim was resolved by the Third Amended Plan. Likewise, the Debtor may not request a refund of taxes actually paid pursuant to the terms of the Third Amended Plan. Section 1141(a) binds *both* parties to the terms of the confirmed Third Amended Plan.

■ The Debtor, however, argues that "the § 505 Motion is technically not an objection to a claim under § 502, but a proceeding to determine a tax under § 505." Debtor's Jurisdiction Brief at 8. Such an attempted

distinction really elevates form over substance. After all, what the Debtor seeks to accomplish by its request for relief under § 505 is to challenge the amount of the real property tax claims filed in the Debtor's bankruptcy case.[25] The court concludes that on the facts of this case, the Debtor's request for relief under § 505 is an objection to Kentwood's tax claims.

■ Even if this court agreed with the Debtor's argument that its request for relief under § 505 is not the equivalent of an objection to Kentwood's tax claims, the court concludes that the Debtor had a full and complete opportunity to litigate its tax liability *prior* to confirmation of the Third Amended Plan. The Debtor filed timely appeals with the MTT of Kentwood's tax assessments for the tax years 1991 and 1992; the Debtor failed to do so for years 1989 and 1990. *See*

motion with their late-filed proofs of claim asking the court to permit the late filings under Fed.R.Bankr.P. 9006(b)(1)). The Debtor only filed a § 505 motion. Even if the court were to read the § 505 motion as a motion to enlarge time under Fed.R.Bankr.P. 9006(b)(1), this court questions whether the doctrine of excusable neglect applies in this proceeding.

First, unlike the claims bar date at issue in *Pioneer*, the claims objection deadline in Debtor's bankruptcy case was not established by the court; it was established by the Debtor in its Third Amended Plan. In *Pioneer*, the Supreme Court considered it "significant that the notice of the bar date provided by the Bankruptcy Court ... was outside the ordinary course in bankruptcy cases." *Id.* at ——, 113 S.Ct. at 1499. Although agreeing that creditors' counsel was remiss in not ascertaining the claims bar date, the court specifically stated that the " 'peculiar and inconspicuous placement of the bar date' " created " 'dramatic ambiguities' " in the notice. *Id.* at ——, 113 S.Ct. at 1500 (citing the lower court's opinion, *In re Pioneer Investment Servs. Co.*, 943 F.2d 673, 678 (6th Cir.1991)). The Debtor in this case was not relying on any ambiguous court notice. The Debtor itself established the postconfirmation claims objection period. Only a completely strained reading of *Pioneer* would allow a debtor to use the doctrine of excusable neglect to avoid a deadline *it* established.

Second, the Debtor never asserts that it was unaware of the postconfirmation claims objection deadline provided for by the Third Amended Plan. The Debtor filed objections to other creditors' claims within this 120–day postconfirmation objection period. *See, e.g.*, Base Case Docket # 1522 (Debtor's objection to claim of City of Grand Rapids Income Tax Department). In fact,

the Debtor filed two objections to claims just one day shy of the expiration of the 120–day postconfirmation claims objection period. *See* Base Case Docket ## 1535, 1537 (Debtor's objections to two claims of Dana Commercial Credit Corporation).

In addition, the Debtor states in its Jurisdiction Brief that it did not file its § 505 motion earlier because it did not read the Third Amended Plan as "establishing a deadline for § 505 Motions, as *opposed to objections to claims.*" Debtor's Jurisdiction Brief at 10 (emphasis added). The Debtor is correct: the Third Amended Plan did not establish a deadline for § 505 motions. But the Debtor cannot have it both ways. If the § 505 motion is an objection to claim, the Debtor should have filed such a motion within the 120–day postconfirmation objection period. But if the § 505 motion is not an objection to claim, then excusable neglect simply does not apply. The excusable neglect exception in Fed.R.Bankr.P. 9006(b)(1) operates to extend *deadlines* established by the bankruptcy rules or court order. While it is questionable whether Fed.R.Bankr.P. 9006(b)(1) should apply to a deadline established by the debtor in its plan, it is clear Fed.R.Bankr.P. 9006(b)(1) does not apply when there is *no* deadline to extend. The Third Amended Plan provided no deadline for filing § 505 motions. If this court accepted the Debtor's argument, every failure to assert rights allowed under the Code could fall under the rubric of excusable neglect.

25. An examination of the Bankruptcy Code itself confirms this analysis. Chapter 5 of the Code is entitled "Creditors, Debtor, and the Estate." Subchapter I of Chapter 5 covers "Creditors and Claims." Section 505 falls within Subchapter I.

Complaint ¶ 9, at 3; Answer ¶ 9, at 2. The Debtor and Kentwood *could* have agreed to modify the automatic stay (to the extent it arguably may have applied) in order to proceed with the MTT action regarding the 1991 and 1992 tax years.

The Debtor *could* have filed a § 505 motion with this court at any time between September of 1991, when it commenced its chapter 11 case, and November of 1992, when this court confirmed the Debtor's Third Amended Plan. In September of 1991, real property taxes for the years 1989 through 1991 already had been assessed by Kentwood; 1992 taxes were assessed four months later, on December 31, 1991. *See supra* Part III.B.2.b.i (discussion of "tax day" under Michigan law). Proofs of claim for the 1989 and 1990 taxes were filed on November 1, 1991; a proof of claim for the 1991 taxes was filed on August 20, 1992. Thus, this proceeding does not involve any surprise to the Debtor due, for example, to concealed facts or fraud. *See Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (citations omitted). (Under the doctrine of res judicata "[t]he judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.").

 The Debtor *could* have provided in its Third Amended Plan that it intended to pursue litigation under § 505 of the Code after confirmation of the Plan.[26] The Debtor argues that its intention to contest Kentwood's tax claims is manifest in both the Third Amended Plan and the Disclosure Statement. *See* Debtor's Jurisdiction Brief at 2–3. This court disagrees.

First, the Third Amended Plan is silent on this matter. There is no indication whatsoever in the Plan that the Debtor objected at all to any tax claims asserted by Kentwood. *See, e.g.,* Third Amended Plan, Article II, Class 3b at 8. Article IV, Objections to Claims, is two sentences long and provides 120 days after the effective date for *any* objections to claims. Third Amended Plan, Article IV at 41. Article VIII, the so-called retention of jurisdiction provision of the Third Amended Plan, does not mention the Debtor's decision or intention to pursue a § 505 proceeding postconfirmation. Third Amended Plan, Article VIII at 49.

Second, the *one* reference to challenges of real property tax claims in the Debtor's Disclosure Statement is far from a clear statement that the Debtor intended to bring a § 505 motion to determine its tax liability to Kentwood. In the Financial Information—Projections section of the Disclosure Statement, the Debtor stated as follows:

> The full amount of real and personal property tax claims are reflected in the projections, although the company believes that certain of these claims are excessive and will be challenged. Based upon the difference between the appraised value of the hotel properties and the assessed valuation, the company believes that the real property tax claims may be reduced by as much as 50%.

Disclosure Statement at 34–35.[27] This language certainly does not evidence the Debtor's intent to pursue a § 505 proceeding postconfirmation. The language "will be challenged" could refer to an objection to

---

26. A debtor should state in the plan its intention to pursue objections to claims or other *specific* litigation postconfirmation in the bankruptcy court. Such statements of intention do not confer subject matter jurisdiction on the bankruptcy court. *See supra* Part III.B.1. of this opinion. But they help debtors avoid the pitfalls of § 1141(a). The terms of the confirmed plan bind the debtor. Creditors vote on the plan on the basis of how the plan treats their claims. Creditors might vote differently on a plan that provides for postconfirmation challenges to their claims. In addition, § 1141(a) tells creditors that they should expect payment of their claims according to the terms of the confirmed plan. If

the plan does not provide for any postconfirmation challenges to claims, the debtor is bound to pay on those creditors' claims as provided for by the plan.

27. On October 12, 1992, the court approved the Disclosure Statement. *See* Order Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof, Base Case Docket # 1184. The Debtor subsequently filed the Third Amended Plan, which this court confirmed on November 24, 1992.

claim. After all, the Debtor did provide in the Third Amended Plan for a 120–day period after the effective date of the Plan to object to claims. Moreover, it does not alert *any* tax claimant, let alone Kentwood, to the Debtor's intent to ignore the 120–day postconfirmation claims objection period in favor of a § 505 proceeding brought more than nine months after confirmation of the Debtor's Third Amended Plan.

In conclusion, this court finds that the Debtor had the opportunity to fully litigate its challenge to Kentwood's tax claims for the years 1989 through 1992 either prior to confirmation of the Third Amended Plan or within the 120–day postconfirmation period provided in the Plan for claims objections. The Debtor failed to timely litigate the tax claims issues. Nonetheless, the doctrine of res judicata does not require *actual* litigation. Accordingly, the court concludes that the third element of res judicata is satisfied.

■ The final element of res judicata—identity of the causes of action—also is satisfied. "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 484 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993) (citing *Westwood Chemical Co. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981)). The facts underlying the Debtor's request for relief under § 505 and the evidence necessary to sustain the § 505 action revolve around Kentwood's tax assessment on the Holiday Inn–East for tax years 1989 through 1992. Had the Debtor timely objected to Kentwood's tax claims either prior to confirmation or during the 120–day postconfirmation objection period, the Debtor would have produced the same facts and evidence as required by this § 505 proceeding. Similarly, had the Debtor initiated a § 505 proceeding prior to confirmation, the facts and evidence would have been identical to that required by the instant § 505 proceeding.

Therefore, this court finds that all four elements of res judicata are satisfied. The effect of such a finding is to preclude the Debtor from "relitigating" its tax liability to

Kentwood for the tax years 1989 through 1992.

■ The Debtor argues, however, that res judicata should not bar it from proceeding in the MTT with its appeals of tax years 1991 and 1992. *See* Holly's Reply Memorandum of Law in Support of Bankruptcy Court Jurisdiction to Determine Tax Liability [hereinafter "Debtor's Reply Memorandum"]. This court disagrees.

The Debtor had ample opportunity to litigate its tax liability to Kentwood within the bankruptcy court. Nothing precluded the Debtor from agreeing with Kentwood to modify the automatic stay (to the extent it arguably may have applied) and proceeding with the appeals before the MTT. Nothing precluded the Debtor from seeking relief under § 505 prior to confirmation of the Third Amended Plan. Nothing precluded the Debtor from objecting to Kentwood's tax claims. Based on the record before the court, the Debtor did *nothing* to challenge Kentwood's tax claims during the nineteen and one half months between the Debtor's filing its chapter 11 case and the expiration of the 120–day postconfirmation claims objection period provided for by the Third Amended Plan. "It is just as important that there should be a place to end as that there should be a place to begin litigation." *Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 138, 83 L.Ed. 104 (1938). The Debtor had its opportunity to litigate its tax claims but for some reason, whether strategic or inadvertent, failed to avail itself of that opportunity.

What is even more troubling about the Debtor's argument, if accepted, is that it would render the claims allowance process in bankruptcy a nullity. Section 502 of the Bankruptcy Code provides that if a creditor, such as Kentwood, files a proof of claim and no objection is made to that proof of claim, then the creditor's claim is allowed. The Debtor provided for an extended 120 days after the Plan's effective date to object to claims. Upon expiration of that objection period, however, the Debtor had filed no objection to Kentwood's claims. Accordingly, Kentwood's claims were deemed allowed under the Bankruptcy Code.

In addition, § 1141(a) of the Code provides that the plan is binding upon not only the creditors but also the debtor. Thus, any payment to Kentwood, pursuant to the terms of the Third Amended Plan, for 1992 taxes as an administrative expense is final. The Debtor argues that it was required to pay the 1992 taxes by order of this court. *See* Debtor's Reply Memorandum at 3 n. 2. That is true. However, this court did not preclude the Debtor from contesting the amount of those 1992 taxes in a proceeding prior to confirmation. By paying the 1992 taxes as administrative expenses, providing for the payment of administrative expenses in Class 1 of the Third Amended Plan, and failing to timely object to the amount of 1992 taxes, the Debtor bound itself to the payments made to Kentwood for 1992. *See* 11 U.S.C. § 1141(a). After all, Kentwood cannot now come before this court and argue that it is entitled to *more* taxes for 1992. It is bound by the terms of the Third Amended Plan. So is the Debtor.

If the Debtor is able to now proceed with an appeal before the MTT of Kentwood's tax claims, the Debtor effectively gets a second bite at the apple. For example, if the MTT finds that the Debtor's tax liability for 1991 differs from Kentwood's allowed claim in bankruptcy, then the Debtor has effectively circumvented the claims allowance process in bankruptcy. Moreover, allowing the Debtor to pursue its appeals (for 1991 and 1992) before the MTT means the Debtor is not bound by the terms of the confirmed Third Amended Plan. *See* 11 U.S.C. § 1141(a). The end result would be to destroy the finality of bankruptcy orders and determinations of creditors' claims.

The Debtor has had ample opportunity to challenge its tax liability to Kentwood. This court confirmed the Third Amended Plan in November of 1992. "Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930

F.2d 458, 463 (6th Cir.1991) (citations omitted). Therefore, the doctrine of res judicata bars the Debtor from further litigating its tax liability to Kentwood for the years 1989 through 1992 in *any forum.*[28]

## IV. CONCLUSION

In Count I of its Complaint, the Debtor asked this court to determine its real property tax liability to Kentwood, pursuant to § 505, for the years 1989 through 1993. In Count II, the Debtor sought recovery of any overpayment of taxes, with interest. In its Summary Judgment/Dismissal Motion, Kentwood asked this court to dismiss the Debtor's Complaint with prejudice as to the 1989 through 1992 tax years, and to dismiss without prejudice the Debtor's Complaint as to the 1993 tax years.

The court concludes that it has subject matter jurisdiction to render a final judgment on the Debtor's real property tax liability to Kentwood for the years 1989 through 1992 only. The court lacks subject matter jurisdiction to decide the dispute as to 1993 real property taxes owed to Kentwood. The court further concludes that the doctrine of res judicata bars the Debtor's request, pursuant to § 505(a), to determine its tax liability to Kentwood for the years 1989 through 1992. Therefore, this court grants Kentwood's motion for summary judgment as to Counts I and II of the Debtor's Complaint. An order shall be entered in accordance with this opinion.

---

**28.** Given the court's decision, it is unnecessary to address the abstention issue.